Argued and submitted March 31, reversed and remanded June 25, petition for
review allowed October 7, 1997 (326 Or 62)
See later issue Oregon Reports

Robert CURTIS,
*Appellant,*

*v.*

MRI IMAGING SERVICES II,
an Oregon limited partnership,
and ABCT, Inc.,
an Oregon corporation,
*Respondents,*

*and*

NORTH LINCOLN HOSPITAL HEALTH DISTRICT,
dba North Lincoln Hospital,
an Oregon non-profit corporation,
*Defendant.*

(941288; CA A92095)

941 P2d 602

J. Michael Alexander argued the cause for appellant. With him on the briefs was Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C.

Alexander Gordon argued the cause and filed the brief for respondents.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

**HASELTON, J.**

■■    Plaintiff appeals, challenging the entry of judgment on the pleadings, ORCP 21 G(3), against his claim for negligence. The dispositive issue is novel: Under Oregon law, can a victim of medical malpractice, who has not suffered physical injury, nevertheless recover damages for negligent infliction of emotional distress? We conclude that the relationship between plaintiff and defendant medical professionals, as framed by the pleadings, gave rise to a "legally protected interest" and that the alleged invasion of that interest was of the sort that would permit plaintiff to recover emotional distress damages without any showing of concurrent physical injury. Accordingly, we reverse and remand.

■■    In reviewing a judgment on the pleadings, we accept all factual allegations in the complaint as true. *Withers v. State of Oregon*, 133 Or App 377, 381, 891 P2d 675 (1995), *rev den* 321 Or 284. Entry of judgment on the pleadings is proper when the allegations in the pleadings affirmatively show that the plaintiff cannot prevail as a matter of law. *Id*. at 382.

Plaintiff's operative fourth amended complaint alleged the following facts: On November 9, 1992, plaintiff arranged through North Lincoln Hospital to undergo an MRI.[1] The test was performed in a mobile unit that was set up in the hospital's parking lot. Defendants MRI Imaging Services II and ABCT, Inc., administered the test.[2]

Before and during the MRI procedure, defendants "negligently" failed to:

"1.    * * * properly explain the nature of the MRI procedure to the Plaintiff prior to instituting such procedure, particularly in failing to warn the Plaintiff of the possible claustrophobic effects of the MRI;

---

[1] MRI is a noninvasive diagnostic technique that uses the simultaneous application of a magnetic field and electromagnetic radiation to discover information about the molecular material in a patient's body. MRI is used to diagnose brain tumors and disorders, spinal disorders, multiple sclerosis, and cardiovascular disease. The procedure is considered to be medically risk-free. *The Concise Columbia Encyclopedia* 521 (3d ed 1994).

[2] "Defendants" herein refers only to MRI Imaging Services II and ABCT, Inc. North Lincoln Hospital was also a defendant but was dismissed by stipulation of the parties.

"2. * * * take an adequate medical and psychological history from the Plaintiff, including the history of pre-existing asthmatic condition;

"3. * * * properly monitor the progress of the Plaintiff during the course of the MRI procedure; and

"4. * * * promptly terminate the MRI procedure when Plaintiff complained of difficulties with breathing, and indicated a desire for the procedure to end."

As a result of that failure, plaintiff experienced severe emotional distress. More particularly,

"[he] became extremely distressed, a condition which was exacerbated by his pre-existing asthma. His emotional status worsened during the entire procedure, and has resulted in continued and permanent psychological damage, including post-traumatic stress disorder, adjustment disorder with anxious mood, major depression, generalized anxiety disorder and panic disorder with agoraphobia. These psychological conditions are severe, continuing, and permanent."

Plaintiff sought damages of $75,000 to compensate him for his "extreme and severe emotional distress, sleeplessness, fear and anxiety, which have significantly interrupted his normal lifestyle and will continue to do so in the future."[3]

In their answer, defendants admitted that they had performed the MRI. As an "affirmative defense," defendants asserted:

"The plaintiff has plead a claim for the negligent infliction of emotional distress unaccompanied by either any actual or threatened physical harm or injury to another legally protected interest. Such a claim is not recognized in Oregon. The plaintiff has failed to state ultimate facts constituting a claim."

On the day of trial, defendants moved for judgment on the pleadings. ORCP 21 G(3). Invoking *Hammond v. Central Lane Communications Center*, 312 Or 17, 816 P2d 593 (1991), and *Saechao v. Matsakoun*, 78 Or App 340, 345-48, 717 P2d 165, *rev dismissed* 302 Or 155 (1986), defendants

---

[3] Plaintiff also sought economic damages, for past and anticipated future medical expenses, of approximately $13,500.

asserted that Oregon law does not recognize a cause of action for negligent infliction of emotional distress where there is neither physical harm nor injury to a "legally protected interest" distinct from liability based on general foreseeability, and that plaintiff's complaint did not plead either of those conditions.

Plaintiff responded with two arguments. First, the relationship between plaintiff and defendant medical professionals who administered the MRI gave rise to a distinct "legally protected interest" beyond liability grounded in general principles of foreseeability. Second, because he was a "direct," rather than "indirect," victim of defendants' negligence, the bar to recovery in *Hammond, Saechao,* and related cases was inapposite. As support for the latter proposition, plaintiff relied on our observation in *Harris v. Kissling*, 80 Or App 5, 8, 721 P2d 838 (1986), that "a physical injury is not necessary to support an award of damages for emotional distress if the person seeking damages is the *direct* victim of tortious conduct." (Emphasis in original.)

The trial court granted judgment on the pleadings:

> "Oregon law at this time does not allow for recovery for negligent infliction of emotional distress where there is no physical injury. That is it. It is really that simple. That is the pleading. If I accept everything in the pleadings as true, we still don't get the elemental requirements of the tort.
>
> "I've got to tell you something, I don't know what the facts are in this case, and believe me I don't want you to take this wrong, but I can see a situation where there ought to be recovery for something like this. I'll be darned if—you know, I can see how someone being left in an environment like that or not being handled expertly the entire time could create some psychic trauma for which there should be compensation, but Oregon law simply doesn't allow it."

On appeal, plaintiff and defendants reiterate their arguments. In their briefs and arguments, counsel posit contending—and equally forbidding—slippery slopes and parades of horribles. Plaintiff, for example, contends that defendants' position, by principled extension, would preclude claims for psychological or psychiatric malpractice, where the only injury suffered as a result of a defendant's negligence is,

generally, emotional and not physical. In a similar vein, plaintiff asserts that defendants' analysis would preclude liability for emotional distress damages if a physician negligently diagnosed a healthy patient as having a terminal illness. Defendants counter that plaintiff's position, which emphasizes the special quality of the relationship between a professional and a patient or client, would permit clients to seek emotional distress damages from their attorneys in every legal malpractice claim. Extending plaintiff's principle further, defendants reason, would allow distraught students to recover emotional distress damages from teachers who have misgraded their exams and would permit disappointed investors to obtain psychic, as well as financial, relief from incompetent brokers.

On either side, the abyss beckons: "Hard cases make bad law." Still, we will attempt to mark and tread a principled and practical middle ground.

For at least 60 years, Oregon courts have assumed, albeit implicitly, that emotional distress damages can only be recovered in cases involving physical injury—and then have proceeded to carve out exceptions to that general proposition.[4] The cases have fallen generally, though inexactly, into three categories: (1) claims for emotional distress resulting from the defendant's tortious conduct directed against persons other than the plaintiff; (2) claims for emotional distress resulting from the defendant's tortious conduct directed against the plaintiff; and (3) "hybrid" claims for emotional distress resulting from tortious conduct directed against both the plaintiff and third persons.

*Saechao* and *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 652 P2d 318 (1982), exemplify the first, "indirect injury" category. In *Saechao*, we held that two siblings who witnessed an auto accident in which their younger

---

[4] Plaintiff points out correctly that no Oregon decision has explicitly stated that "rule" in circumstances in which the plaintiff was the *direct* victim of the tortious conduct. *Compare Saechao v. Matsakoun*, 78 Or App 340, 345-48, 717 P2d 165, *rev dismissed* 302 Or 155 (1986) (plaintiffs who suffered psychic injury from witnessing negligent physical injury to a close relative, but who suffered no physical injury, could not recover emotional distress damages). Nevertheless, as amplified below, that "rule"—or, more correctly, unspoken first premise—underlies the evolution of Oregon law in this area.

brother was killed, but who were not themselves physically injured, could not recover emotional distress damages. In so holding, we adopted the "impact" rule for such cases and expressly rejected the more broadly remedial "zone of danger" formulation.[5] Similarly, in *Norwest,* the court concluded that the plaintiff's child could not recover emotional distress/ "parental consortium" damages based on the defendants' alleged malpractice in treating the plaintiff's mother. *See, e.g.,* 293 Or at 560-61 (noting general "rule that negligence alone, as a reason to shift the burden of a resulting loss, has not been deemed so grievous as to hold the negligent actor liable beyond the immediate victim's injury to others who suffer a loss only in consequence of that injury").

Most reported decisions fall into the second, "direct injury" group. *See, e.g., Nearing v. Weaver,* 295 Or 702, 670 P2d 137 (1983) (sustaining claim for emotional distress damages arising from officers' failure to enforce restraining order); *Melton v. Allen,* 282 Or 731, 580 P2d 1019 (1978) (affirming dismissal of claim seeking emotional distress damages, based on the defendant towing company's trespass to the plaintiff's automobile); *Collver v. Salem Insurance Agency, Inc.,* 132 Or App 52, 887 P2d 836 (1994), *rev den* 320 Or 598 (1995) (holding that the plaintiff was not entitled to recover emotional distress damages arising from the defendants' negligent failure to procure auto insurance coverage); *Hilt v. Bernstein,* 75 Or App 502, 707 P2d 88 (1985), *rev den* 300 Or 545 (1986) (trial court did not err in striking the plaintiff's allegations that sought emotional distress damages related to the defendant attorney's malpractice in handling her divorce).

The third, "hybrid" category is somewhat more amorphous. However, the Supreme Court's most recent discussion in this area, *Hammond,* appears to fall into that group. In *Hammond,* the plaintiff sought emotional distress damages based on the defendants' mishandling of a 9-1-1 call that the plaintiff had made concerning her husband. The

---

[5] *See also Heusser v. Jackson County Health Dept.,* 92 Or App 156, 757 P2d 1363 (1988), *rev den* 307 Or 326 (1989) (affirming dismissal of mother's complaint, which sought emotional distress damages arising from the defendants' negligent inoculation of her children with live virus vaccine).

plaintiff's pleadings *could* be viewed as alleging both indirect injury from the failure to treat her husband promptly and properly, as well as direct injury from the failure to respond promptly to the plaintiff's call. In all events, in rejecting the plaintiff's claim for "negligent infliction of emotional distress," the court, citing *Norwest*, concluded that the plaintiff could not recover because she had not sustained any physical injury. 312 Or at 25.[6]

In *Hammond*, the court summarized and organized the exceptions to the general assumption, under Oregon law, that psychic distress is not compensable unless accompanied by physical injury:

"This court has recognized common law liability for psychic injury alone in three situations. First, where the defendant intended to inflict severe emotional distress. Second, where the defendant intended to do the painful act with knowledge that it will cause grave distress, when the defendant's position in relation to the plaintiff involves some responsibility aside from the tort itself. Third, where the defendant's conduct infringed on some legally protected interest apart from causing the claimed distress, even when that conduct was only negligent."[7] 312 Or at 22-23 (citations omitted).

Here, plaintiff does not allege that defendants either engaged in intentional misconduct or intended to inflict emotional distress; consequently, the only arguably applicable trigger for liability is the third, "legally protected interest" exception. Further, plaintiff's claim here is unambiguously one of direct injury; consequently, we need not be concerned with the special constraints of "indirect injury" or "hybrid"

---

[6] One case that may defy categorization is *Hovis v. City of Burns*, 243 Or 607, 415 P2d 29 (1966). There, the court held that the plaintiff was entitled to recover damages for emotional distress resulting from the defendants' negligent disinterment of her husband's remains.

[7] In *Meyer v. 4-D Insulation Co., Inc.*, 60 Or App 70, 73-74, 652 P2d 852 (1982), this court identified four groups of exceptions that correspond, more or less, to the three general categories of exceptions identified in *Hammond*:

"The cases can be grouped into four main categories, although they cannot be said to form a definite pattern: (1) certain intentional torts, including trespass to land * * *; (2) private nuisance; (3) invasion of privacy; and (4) miscellaneous cases[.]" (Citations omitted.)

liability noted above. Thus, our inquiry is focused: Has plaintiff, as the direct victim of defendants' negligence, alleged facts describing an invasion of a separate "legally protected interest" sufficient to permit the recovery of damages for emotional distress without concurrent physical injury?

We begin, perhaps pedantically, with the meaning of "legally protected interest." The genesis of that term appears to lie in *Macca v. Gen. Telephone Co. of N.W.*, 262 Or 414, 495 P2d 1193 (1972). In *Macca*, the defendant had negligently mislisted a telephone number in a yellow pages directory, causing the plaintiff to receive calls at all hours of the night; that, in turn, caused the plaintiff to suffer emotional distress. The court, in sustaining the plaintiff's recovery of emotional distress damages, concluded that the defendant's conduct

> "resulted in an invasion of plaintiff's right to enjoy her property without unreasonable interference. As such it is governed by the law relating to a private nuisance, and plaintiff is entitled to recover for mental distress resulting from defendant's negligent act." *Id*. at 418.

In so holding, the court observed:

> "Allowing recovery for mental suffering and anguish unaccompanied by physical injuries under the circumstances of the present case is in accord with previous decisions of this court. Where an *independent basis of liability* exists, irrespective of whether there existed physical injuries, recovery has been uniformly allowed for mental suffering and anguish." *Id*. at 420 n 1 (citing cases; emphasis supplied).

Thus, in *Macca*, the "independent basis of liability," which was later denominated "legally protected interest," was the plaintiff's property-law based right of use and enjoyment. *See also Edwards v. Talent Irrigation District*, 280 Or 307, 309, 570 P2d 1169 (1977) (sustaining the plaintiffs' recovery of emotional distress damages in action for negligent release of water onto the plaintiffs' property: "[D]efendant's negligence has interfered with plaintiffs' interest in the use and enjoyment of their land.").[8]

---

[8] One often-cited example of a case involving a separate "legally protected interest" is *Hovis*, note 6 above, which antedated *Macca v. Gen. Telephone Co. of N.W.*, 262 Or 414, 495 P2d 1193 (1972), and was cited in *Macca's* "independent

In *McEvoy v. Helikson*, 277 Or 781, 562 P2d 540 (1977), the court reiterated the distinct "legal right" requirement. There, the plaintiff sued his former wife's attorney, alleging that the attorney had negligently returned the wife's passport to her, in violation of a custody order, permitting the wife to abscond to Switzerland with the couple's daughter. The trial court dismissed the action, and the Supreme Court reversed. In rejecting the defendant's argument that the plaintiff had failed to allege the requisites of recovery of emotional distress damages, the court commented:

> "Under the terms of the divorce decree, as attached to the complaint, plaintiff had a legal right to the custody of his child and it is the infringement of that right which is the subject of this action. It follows, in our opinion, that conduct by defendant which resulted in an infringement of that legal right, if established by evidence on trial, would entitle plaintiff to recover damages for 'anguish and mental [suffering] due to the loss of his minor child,' as alleged in the complaint." *Id.* at 789.

The term "legally protected interest" first appeared in this context in *Norwest*, an "indirect injury" case. In rejecting the plaintiff's "parental consortium" claim, the court observed:

> "If there are few causes of action for psychic or emotional harm as such, the reason is not found in objections to monetary damages for harm of that nature. The reason may be found by focusing, not on the nature of the plaintiff's loss, but on the source and scope of the defendant's liability. This court has recognized common law liability for psychic injury alone when defendant's conduct was either intentional or equivalently reckless of another's feelings in a responsible relationship, or when it infringed some legally protected interest apart from causing the claimed distress, even when only negligently. * * * But we have not yet extended liability for ordinary negligence to solely psychic or emotional injury not accompanying any actual or threatened physical harm or any injury to another legally protected interest." 293 Or 558-59 (footnotes omitted).

---

basis of liability" discussion. *Id.* at 420 n 1. The court in *Hovis* did not, however, employ the "legally protected interest" or "independent basis of liability" rubric.

The court concluded:

> "The obstacle to plaintiff's action is that ordinarily negligence as a legal source of liability gives rise only to an obligation to compensate the person immediately injured, not anyone who predictably suffers loss in consequence of that injury, unless liability for that person's consequential loss *has a legal source besides its foreseeability.*" *Id.* at 569 (emphasis supplied).

A year later, in *Nearing*, the court amplified the "legally protected interest" concept and explicitly stated that that "interest" must be distinct from liability grounded in the generic common-law duty to avoid foreseeable harm:

> "Plaintiffs [assert] that Oregon law does allow recovery of damages for psychic or emotional harm when defendant's conduct infringes some legal right of the plaintiff independent of an ordinary tort claim for negligence. Plaintiffs are right. * * *
>
> "* * * * *
>
> "The question, therefore, is whether plaintiffs pleaded an infringement by defendants of a legal right arising independently of the ordinary tort elements of a negligence action. It is clear that plaintiffs did so.
>
> "The complaint alleges facts that, if proved, obliged the St. Helens police officers to respond to plaintiffs' call for protection against the exact kind of harassment * * * that is said to have occurred, and it alleges that the officers refused to enforce the restraining order in the manner prescribed by law. *The duty defendants are alleged to have neglected therefore is not an ordinary common law duty of due care to avoid predictable harm to another.* It is a specific duty imposed by statute for the benefit of individuals previously identified by a judicial order.
>
> "* * * * *
>
> "In explaining their claim to the trial court as well as on appeal, plaintiffs described it as a type of action for defendants' negligent failure to perform their duty, * * * though the words 'negligent' or 'negligence' neither were nor had to be used in the complaint. This invited possible confusion insofar as *there is no cause of action for negligent infliction of purely psychic or emotional injury as such, unsupported*

*by a violation of some more specific duty toward the plaintiff.* * * *

"* * * [P]laintiff's reference to 'negligence' in this case was immaterial to the alleged liability, if 'negligence' is used in the sense of 'carelessness' or 'failure to use due care' rather than merely as a conventional legal totem, because the result would not be different if defendants had acted, or failed to act, willfully or intentionally or with some other state of mind. *It must be recalled what role the allegation of 'negligence' plays in an ordinary common law case. In general terms that role is to invoke a duty to take reasonable care not to cause a risk of a foreseeable type of harm to a foreseeable class of plaintiffs.*" 295 Or at 706-08 (emphasis supplied).

■    As we understand "legally protected interest," as described in *Norwest* and *Nearing*, that term refers to a sort of "duty" that is distinct from *Fazzolari*[9]-like foreseeability. *See Norwest*, 293 Or at 569; *Nearing*, 295 Or at 708. The identification of such a distinct source of duty is the *sine qua non* of liability for emotional distress damages unaccompanied by physical injury. *See Hammond*, 312 Or at 25 (rejecting liability for emotional distress damages where the plaintiff identified "no legal source of liability for her emotional injury other than its foreseeability").

■    We conclude that the relationship between plaintiff and defendant medical professionals, as alleged in the complaint, does give rise to such an actionable "legally protected interest." Obviously, an action for malpractice and, particularly, failure to obtain informed consent, sounds, at least in part, in negligence. Just as obviously, a medical professional's standard of care toward his or her patients—and liability for breach of that standard—transcends mere *Fazzolari* foreseeability. That is, the relationship between medical professionals and their patients, of the sort alleged in this case, imposes a duty on the care providers that goes beyond the general common-law duty to exercise reasonable care to prevent foreseeable harm. *See, e.g., Dowell v. Mossberg*, 226 Or 173, 190, 359 P2d 541 (1961). As the Supreme Court recently observed, in an analogous context:

[9] *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987).

"[W]e first examine the types of relationships in which one party owes the other a duty to exercise reasonable care beyond the common-law duty to prevent foreseeable harm.

"Oregon law imposes such a duty of care upon certain professionals in actions toward their clients. For example, lawyers owe their clients a duty to exercise reasonable care, as do physicians toward their patients. * * *

"* * * * *

"* * * Another way to characterize the types of relationships in which a heightened duty of care exists is that the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution.

"This special responsibility exists in situations in which one party has hired the other in a professional capacity, as well as in principal-agent and other similar relationships." *Conway v. Pacific University*, 324 Or 231, 239-40, 924 P2d 818 (1996) (emphasis in original).

The analogous issue addressed in *Conway* was the proper scope of liability for economic damages resulting from negligent misrepresentation. In *Conway*, as in *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 843 P2d 890 (1992), the court held that such liability "must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Id.* at 159. In both cases, the court stated that the existence of a professional relationship would give rise to such a distinct duty, permitting the imposition of liability.[10]

---

[10] Neither *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 165, 843 P2d 890 (1992), nor *Conway v. Pacific University*, 324 Or 231, 239-40, 924 P2d 818 (1996), involved a professional relationship. In both cases, the court held that the circumstances presented did not permit the recovery of damages for negligent misrepresentation.

The parallel to this case, though imperfect, is apparent. Just as liability for negligent misrepresentation must be predicated on a source distinct from "the common law duty to prevent foreseeable harm," *Conway*, 324 Or at 239, liability for negligent infliction of emotional distress must be grounded in a legal source beyond mere foreseeability. *Norwest*, 293 Or at 569. Just as the existence of a professional relationship gives rise to the requisite actionable duty of care for purposes of negligent misrepresentation, so too does the alleged relationship between the present plaintiff and defendants give rise to the requisite separate "legally protected interest" for purposes of negligent infliction of emotional distress. Plaintiff entrusted himself to defendants. Plaintiff relied on defendants' professional competence and performance and, consequently, gave defendants "responsibility and control" over the administration of the MRI procedure. *Conway*, 324 Or at 240. In so doing, plaintiff "effectively * * * authorized [defendants] to exercise independent judgment in [plaintiff's] behalf and in [plaintiff's] interests." *Id.*[11]

Plaintiff has, thus, pleaded facts demonstrating a separate "legally protected interest." That does not quite end our inquiry, however. As we observed in *Collver*, "we have never said that the mere existence of a legally protected interest is sufficient to allow a plaintiff to recover emotional distress damages in the absence of a physical injury." 132 Or App at 64. Rather, even if such an interest is demonstrated, the alleged invasion of that interest must be "of sufficient importance [as] to warrant the award of damages for emotional distress." *Id.* at 66. *See also Hilt*, 75 Or App at 515 ("The critical inquiry becomes whether the kind of interest

---

[11] Other jurisdictions have allowed recovery for negligent infliction of emotional distress, without physical injury, where a special relationship gave rise to a heightened duty of care. *See Oswald v. LeGrand*, 453 NW2d 634, 639 (Iowa 1990) (recognizing an exception to the rule of no recovery in negligence without physical injury, because a duty to exercise "ordinary care to avoid causing emotional harm" arises from the medical professional-patient relationship); *Burgess v. Superior Court (Gupta)*, 2 Cal 4th 1064, 9 Cal Rptr 2d 615, 831 P2d 1197, 1201 (1992) (allowing recovery of mental distress damages in medical malpractice action, where a "duty arising from a preexisting relationship [had been] negligently breached"); *Marlene F. v. Psychiatric Med. Clinic*, 48 Cal 3d 583, 257 Cal Rptr 98, 770 P2d 278 (1989) (allowing recovery of damages for emotional distress in psychological malpractice action: mental distress damages are recoverable "for severe emotional distress * * * in a negligence action when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship").

invaded is of sufficient importance as a matter of policy to merit protection from emotional impact.").

Two brief illustrations of that concept should suffice. In *Hilt*, the plaintiff sued her former attorney for malpractice, alleging that the attorney's negligence in counseling her during a divorce proceeding had resulted in the loss of her equity in her home, causing her mental distress. We did not resolve the issue of whether the attorney-client relationship gave rise to a legally protected interest.[12] Instead, we concluded that, because the plaintiff's underlying loss, *viz.*, the loss of her home, was "solely an economic one," the invasion of any interest was not sufficient to warrant the recovery of emotional distress damages. *Hilt*, 75 Or App at 515.

In *Collver*, we considered whether the plaintiff could recover emotional distress damages on a claim against an insurance broker and carriers for negligent failure to procure auto insurance coverage. The plaintiff contended that the loss of his driver's license as a result of being an uninsured driver constituted an invasion of a separate "legally protected interest" sufficient to permit recovery of emotional distress damages. After canvassing the case law, we concluded that, "[a]ssuming without deciding that an invasion of a legally protected interest has occurred * * *, the invasion is not of sufficient importance to warrant the award of damages for emotional distress * * *; the invaded interest is chiefly an economic one." 132 Or App at 66.

The determination of whether an invasion of a protected interest is of a sufficient quality or magnitude to warrant recovery of emotional distress damages seems, almost inevitably, to be case-specific. *See, e.g., Meyer v. 4-D Insulation Co., Inc.*, 60 Or App 70, 74, 652 P2d 852 (1982) (describing seemingly "ad hoc" quality of judicial decisions in this

---

[12] In *Hilt v. Bernstein*, 75 Or App 502, 512-14, 707 P2d 88 (1985), *rev den* 300 Or 545 (1986), we distinguished *Rockhill v. Pollard*, 259 Or 54, 485 P2d 28 (1971), and *McEvoy v. Helikson*, 277 Or 781, 562 P2d 540 (1977), two cases that the plaintiff invoked for the proposition that the "special relationship" between the parties permitted the recovery of emotional distress damages. After distinguishing those cases, however, we did not foreclose the possibility that the existence of a professional relationship could give rise to a legally protected interest. Instead, we merely proceeded to address, and reject, the plaintiff's apparent argument that "she is * * * entitled to damages for emotional suffering whenever *any* alleged violation of an independent legal right is involved." 75 Or App at 514 (emphasis in original).

area). Regardless, we conclude that plaintiff's complaint alleges an invasion sufficient to support recovery of such damages. Here, unlike in *Hilt* and *Collver* and their underlying authority, plaintiff did not suffer mental distress as a secondary consequence of some economic loss occasioned by defendants' negligence. That is, this is not a case in which defendants' negligence caused economic loss that, in turn, generated emotional distress. Rather, plaintiff's psychic distress, as alleged, was the direct consequence of plaintiff's physical confinement and the concomitant violation of his psychic integrity.

The trial court erred in granting judgment on the pleadings.

Reversed and remanded.