Argued and submitted January 9, decision of the Court of Appeals affirmed, judgment of the circuit court reversed, and case remanded to the circuit court for further proceedings April 9, 1998

Robert CURTIS,
*Respondent on Review,*

*v.*

MRI IMAGING SERVICES II,
an Oregon limited partnership,
and ABCT, Inc.,
an Oregon corporation,
*Petitioners on Review,*

*and*

NORTH LINCOLN HOSPITAL HEALTH DISTRICT,
dba North Lincoln Hospital,
an Oregon non-profit corporation,
*Defendant.*

(CC 941288; CA A92095; SC S44395)

956 P2d 960

Alexander Gordon, Portland, argued the cause and filed the petition for petitioners on review.

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C., Salem, argued the cause for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

GILLETTE, J.

---

** Fadeley, J., resigned January 31, 1998, and did not participate in this decision; Graber, J., retired March 31, 1998, and did not participate in this decision.

## GILLETTE, J.

In this tort action, plaintiff sought damages from corporate medical providers for psychological injuries that allegedly resulted from a negligently performed diagnostic test. Pursuant to ORCP 21, the trial court entered judgment for defendants on the pleadings. Noting that plaintiff had alleged only psychological injuries, the court concluded that plaintiff's claim actually was for negligent infliction of emotional distress—a claim that the trial judge did not believe existed in this state. The Court of Appeals reversed. *Curtis v. MRI Imaging Services II*, 148 Or App 607, 941 P2d 602 (1997). We allowed defendants' petition for review to consider whether, despite its failure to allege any physical injury, plaintiff's complaint nevertheless states a valid claim. We conclude that it does and, accordingly, affirm the decision of the Court of Appeals.

For purposes of the issue before us, we accept the facts alleged in the complaint as true. *See Sager v. McClenden*, 296 Or 33, 35, 672 P2d 697 (1983) (stating principle). Briefly, the complaint alleges that plaintiff arranged to undergo an MRI,[1] that defendants, two Oregon corporations, administered the test, and that, in doing so, defendants were negligent in the following particulars:

"1. In failing to properly explain the nature of the MRI procedure to the Plaintiff prior to instituting such procedure, particularly in failing to warn the Plaintiff of the possible claustrophobic effects of the MRI;

"2. In failing to take an adequate medical and psychological history from the Plaintiff, including the history of a preexisting asthmatic condition;

"3. In failing to properly monitor the progress of the Plaintiff during the course of the MRI procedure; and

"4. In failing to promptly terminate the MRI procedure when Plaintiff complained of difficulties with breathing, and indicated a desire for the procedure to end."

---

[1] The MRI (magnetic resonance imaging) procedure uses radio frequency pulses to produce three dimensional images of the body's interior, showing muscle, bone, blood vessels, nerves, organs, and tumor tissue. *Stedman's Medical Dictionary*, 851 (26th ed 1995).

The complaint further alleges that plaintiff became extremely distressed during the procedure, that his distress was exacerbated by his preexisting asthma, and that, ultimately, defendants' negligent performance of the test resulted in "permanent psychological damage, including post-traumatic stress disorder, adjustment disorder with anxious mood, major depression, generalized anxiety disorder and panic disorder with agoraphobia."

In their answer, defendants denied most of what plaintiff had alleged. Defendants also asserted an "affirmative defense," *viz.*, that the allegations of the complaint, although evidently directed toward stating a claim for negligent infliction of emotional distress, were insufficient for that purpose, because they did not allege an actual or threatened physical injury or injury to another legally protected interest. Before trial, defendants raised that same argument in a motion for judgment on the pleadings, pursuant to ORCP 21.

In response to that motion, plaintiff acknowledged that the right to recover for negligently caused emotional distress is limited in this state. Nevertheless, he argued that his complaint stated a valid claim, because (among other things) defendants had infringed on a "legally protected interest" that was distinct from a person's general interest in freedom from emotional distress. That interest, plaintiff argued, arose out of defendants' and plaintiff's relationship as medical provider and patient. Ultimately, the trial court rejected that argument and granted defendants' motion for judgment on the pleadings.

As noted, on plaintiff's appeal, the Court of Appeals reversed. The court began by noting that, although evidence of an accompanying physical injury generally is required, negligent infliction of emotional distress is actionable *without* physical injury, if the negligent conduct infringed on some "legally protected interest" apart from causing the claimed emotional distress. *See Hammond v. Central Lane Communications Center*, 312 Or 17, 22-24, 816 P2d 593 (1991) (stating that standard). After examining the relevant case law, the Court of Appeals concluded that the phrase, "legally protected interest," refers to a duty that goes beyond or is distinct from the general duty that this court described

in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987), to avoid foreseeable injuries. The court then held that the duty that arose out of defendants' relationship with plaintiff in this case met the *Hammond* requirement:

> "We conclude that the relationship between plaintiff and defendant medical professionals, as alleged in the complaint, does give rise to such an actionable 'legally protected interest.' Obviously, an action for malpractice and, particularly, failure to obtain informed consent, sounds, at least in part, in negligence. Just as obviously, a medical professional's standard of care toward his or her patients—and liability for breach of that standard—transcends mere *Fazzolari* foreseeability. That is, the relationship between medical professionals and their patients, of the sort alleged in this case, imposes a duty on the care providers that goes beyond the general common-law duty to exercise reasonable care to prevent foreseeable harm."

*Curtis*, 148 Or App at 618. The Court of Appeals then concluded that, because the complaint thus alleged an invasion of a distinct "legally protected interest" and the alleged invasion was of a sufficient magnitude, the absence of any allegation of physical injury did not defeat plaintiff's claim. *Id.* at 620-22.

In their petition to this court, defendants argue that the Court of Appeals' holding represents an unwarranted expansion of the notion that invasion of a distinct "legally protected interest" will justify recovery for negligently inflicted emotional distress. Defendants insist that the "legally protected interests" described in *Hammond* and its progeny are only those that exist apart from the societal relationship in which the parties find themselves. From that premise, defendants maintain that the present action is not one from the limited category of negligent infliction of emotional distress actions that can be maintained without a showing of physical injury.

Although the parties argue this case on the battleground labeled negligent infliction of emotional distress, we see it from a different perspective. In our view, the most obvious claim stated by the pleadings is a straightforward claim for medical malpractice. Although that characterization of the claim does not relieve this court of its responsibility to

explain why purely psychological harm might be actionable in this case, it does provide the more appropriate vehicle for resolving the issue that is before us.

Recently, in *Zehr v. Haugen*, 318 Or 647, 653-54, 871 P2d 1006 (1994), this court described the elements that must be pleaded and proved in a medical malpractice claim: (1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) a causal link between the breach and the harm. (Citing *Stevens v. Bispham*, 316 Or 221, 227-28, 851 P2d 556 (1993).) Viewing the pleadings in this case in the light most favorable to the plaintiff (as we are obliged to do in reviewing a judgment on the pleadings issued pursuant to ORCP 21), plaintiff alleges all those elements here.

Plaintiff has alleged that defendants performed a medical procedure on him, which is conduct that would give rise to a duty running to plaintiff to exercise that degree of care, knowledge and skill ordinarily possessed and exercised by the average provider of that type of medical service. In addition, it is possible to infer, from plaintiff's specific allegations of negligence, that particular aspects of the relevant standard of care were at issue: a duty to explain the nature of the procedure, to warn of its possible claustrophobic effects, to take an adequate medical history in order to discover any particular physical or psychological sensitivities that might be affected by the procedure, and, finally, to terminate the procedure if the patient begins to experience physical or psychological difficulties.

The fact that plaintiff alleges a standard of care that includes duties that specifically are directed at psychological difficulties, such as claustrophobia, rather than solely at physical ones, is not dispositive. Plaintiff is entitled to plead and prove that the distinction between physical and psychological effects is not always consonant with the thinking and conduct of medical professionals. Clearly, at least some conditions and events that the law deems to be purely psychological qualify as medical concerns in the mind of a medical professional. That being so, a medical professional may operate under a standard of care that includes a specific duty to be aware of and guard against particular adverse psychological

reactions or consequences to medical procedures. That is what plaintiff has alleged here.

There is no question that plaintiff alleges a breach of the aforementioned duties, or that he alleges a causal link between that breach and the asserted harm. The real question is whether the harm alleged—severe and continuing *psychological* harm—is the kind of harm that the law is prepared to recognize as constituting the "harm" element in this kind of claim. *See Stevens*, 316 Or at 228 (distinguishing common meaning of "harm" from "harm" in its legal sense).

Plaintiff's claim invokes specific duties imposed on a group of medical professionals to guard against recognized *medical* risks that happen to be psychological in nature. It is, in that sense, like a patient's claim against a psychotherapist who violates the relevant standard of care by entering into in a sexual relationship with a patient, thereby causing depression or anxiety,[2] or against a physician who inappropriately prescribes a drug that causes or exacerbates a psychological condition.[3]

We are persuaded that, when the claim is that a medical practitioner breached a professional duty to guard against a specified medical harm, the fact that that harm is psychological rather than physical is not a bar to liability. Our holding should not be read to mean that medical professionals operate under a general duty to avoid any emotional harm that foreseeably might result from their conduct. In that regard, their duty is no greater than that of the population at large. But, where the standard of care in a particular medical profession recognizes the possibility of adverse psychological reactions or consequences as a medical concern

---

[2] Courts in other jurisdictions have held that a psychiatrist's or psychologist's negligent handling of the "transference phenomenon" in indulging in a sexual relationship with a patient or a patient's spouse is actionable, regardless of the fact that only psychological harm is alleged. *See, e.g., Rowe v. Bennett*, 514 A2d 802 (Me 1986) (illustrating proposition); *Richard H. v. Larry D.*, 198 Cal App 3d 591, 243 Cal Rptr 807 (Cal App 1 Dist 1988) (same); *Mazza v. Huffaker*, 61 NC App 170, 300 SE2d 833 (1983) (same). *See also Sisson v. Seneca Mental Health Council*, 404 SE2d 425, 428 (W Va 1991) (listing and describing other cases).

[3] *See, e.g., Kampe v. Colom*, 906 SW2d 796 (Mo App W D 1995) (medical malpractice action based on prescription of drugs that had adverse psychological effect on plaintiff).

and dictates that certain precautions be taken to avoid or minimize it, the law will not insulate persons in that profession from liability if they fail in those duties, thereby causing the contemplated harm.

When read in the light most favorable to plaintiff, the complaint alleges that defendants were medical professionals who owed a duty to plaintiff to identify and guard against predictable psychological reactions or consequences—including claustrophobic reactions—to the MRI procedure. It further alleges that defendants breached that duty and that plaintiff suffered severe and continuing psychological injury—anxiety, panic, depression, and post-traumatic stress disorder—as a result. So understood, we hold that plaintiff's complaint states a claim for medical malpractice.

■     As noted, the parties have argued this case on the assumption that negligent infliction of emotional distress is the relevant claim. We need not decide that issue now. Judgment on the pleadings is permissible only if the allegations, when taken in their entirety and viewed in the light most favorable to the plaintiff, affirmatively establish that the plaintiff has *no* claim. *Hawkins v. Conklin*, 307 Or 262, 264, 767 P2d 66 (1988). Our sole task is to determine whether plaintiff has pleaded *any* claim for relief. He has; the trial court erred in concluding otherwise.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to that court for further proceedings.