Tom RATHGEBER
and Karen Rathgeber,
*Respondents,*

*v.*

JAMES HEMENWAY, INC.,
dba Hemenway Realtors/Better Homes & Gardens;
and William Zobel,
*Appellants,*

*and*

OREGON EXTERMINATING COMPANY, INC.
aka Oregon Exterminators;
and Charles C. Odedo,
*Defendants.*

16-98-20193; A108783

30 P3d 1200

Janet M. Schroer argued the cause for appellants. With her on the briefs were Marjorie A. Speirs and Hoffman, Hart & Wagner, LLP.

George W. Kelly argued the cause and filed the brief for respondents.

Andrea L. Bushnell filed the *amicus curiae* brief for Matt Farmer and Oregon Association of REALTORS®.

Charles Robinowitz filed the *amicus curiae* brief for Oregon Trial Lawyers Association.

Before Landau, Presiding Judge, and Wollheim and Brewer, Judges.

BREWER, J.

## BREWER, J.

Defendants appeal from a judgment on a jury verdict for plaintiffs in this action for breach of fiduciary duties and violation of the Unfair Trade Practices Act (UTPA), ORS 646.605 to ORS 646.652. The action arose in connection with a real estate transaction in which defendants represented plaintiffs as buyers' agents. Defendants contend that the trial court erred in denying motions to strike plaintiffs' claim for emotional distress damages and for a directed verdict on plaintiffs' UTPA claim. We review for errors of law, *GPL Treatment, Ltd. v. Louisiana-Pacific Corp.*, 323 Or 116, 118, 914 P2d 682 (1996), and reverse and remand.

We state the facts in the light most favorable to plaintiffs. *Woodbury v. CH2M Hill, Inc.*, 173 Or App 171, 176, 21 P3d 153 (2001). In the summer of 1997, plaintiffs Tom and Karen Rathgeber decided to move from Portland to rural Lane County. Plaintiffs began to search for property, and they hired William Zobel, an associate of Hemenway Realtors, to act as their agent.[1] Zobel told plaintiffs that he was experienced with transactions involving rural residential properties. Plaintiffs described to Zobel characteristics of the property they wanted, instructing him that, if the purchase price were near the top of their price range, they wanted property that would not need repairs. As required by ORS 696.820,[2] Zobel provided to plaintiffs a form entitled "DISCLOSURE REGARDING AGENCY RELATION-SHIPS," which provided, in part:

"A buyer's agent has the affirmative obligations [under ORS 696.810]:

"(1)   To the buyer: The fiduciary duties of loyalty, obe-dience, disclosure, confidentiality, reasonable care

---

[1] Charles Odedo and the Oregon Exterminating Company, Inc., also were named as defendants in this action. Neither entered an appearance, and the trial court entered a default judgment against them. Neither is a party to this appeal.

[2] ORS 696.820 provides, in part:

"An agent shall personally provide each seller and each buyer in a real property transaction with a copy of the disclosure form set forth in ORS 696.830 and, except as provided in subsection (3) of this section, shall obtain a signed acknowledgment of receipt from the seller and the buyer, as set forth in ORS 696.830(2)."

and diligence, and accounting in dealing with the buyer.

"(2)    To the buyer and to the seller: Honest dealing and disclosure."

Tom Rathgeber signed the disclosure form on behalf of plaintiffs, and Zobel signed for defendants.

Zobel showed plaintiffs about 50 properties, and plaintiffs made offers to purchase four of those properties, one of which was accepted by the owners. Because Tom Rathgeber had started working in Lane County and the sellers had already vacated the property, the sellers allowed plaintiffs to take possession before closing. The day before closing, plaintiffs discovered a variety of problems in the house, including a sloped living room floor, loose light-switch covers, missing shelves, and trash lying around the property. Plaintiffs contacted Zobel, who stated that the problems were "going to be an easy fix" and pressed plaintiffs to proceed with closing. After an inspection revealed serious structural problems with the residence, plaintiffs froze the purchase funds they had placed in escrow. The sellers brought an action against plaintiffs for specific performance, and the parties eventually settled that litigation.

Plaintiffs then filed this action alleging that defendants had breached the fiduciary duties listed in ORS 696.810(2).[3] In their complaint, plaintiffs alleged that, as a direct result of those breaches, plaintiffs suffered noneconomic damages for "[e]motional distress incident to the uprooting of their children and themselves from the security of a home of their own, and incident to the threat of being forced to complete the purchase of a house unfit for occupancy * * *." Plaintiffs also alleged that defendants "violated the provisions of the [UTPA] by willfully representing to plaintiffs that their services as buyers' agents had qualities of competence and diligence that they did not have."

Defendants filed a pretrial motion to strike plaintiffs' request for emotional distress damages, arguing that

---

[3] ORS 696.810(2) provides that "[a] buyer's agent has an affirmative obligation to the buyer of the fiduciary duties of loyalty, obedience, disclosure, confidentiality, reasonable care and diligence and accounting in dealing with the buyer."

such damages were not recoverable because plaintiffs' underlying loss was solely economic. The trial court denied the motion. At the conclusion of trial, defendants moved for a directed verdict on plaintiffs' UTPA claim based on ORS 646.608(1)(e),[4] arguing that Zobel had not made any representations furnishing a basis for that claim. Plaintiffs replied that defendants' primary misrepresentation appeared in the disclosure form, which characterized Zobel's role as a buyers' agent and which expressly represented that Zobel would act with diligence. The trial court denied the directed verdict motion as well, stating that it would "allow this to go to the jury with respect to the claim of qualities of qualification, in that second part of (e), under the Unlawful Trade Practices Act."

At trial, plaintiffs presented evidence that Zobel failed to adequately investigate the property to discover foundation problems; failed to procure a dependable dry rot report; relied on a dry rot report that should have been questioned; failed to bring to plaintiffs' attention potential problems with the roofing and a loose light-switch cover that he noticed; failed to insert in the purchase offer a contingency clause related to the sale of plaintiffs' Portland home; failed to provide plaintiffs a property disclosure statement at the proper time; glossed over electrical problems and trash discovered on the property after plaintiffs took possession; pressed plaintiffs to proceed to closing despite plaintiffs' reservations; and failed to tell plaintiffs at any time that they had five days to rescind the transaction. At the conclusion of trial, the trial court instructed the jury that, to recover under ORS 646.608(1)(e), plaintiffs must have proved "that the defendants violated the [UTPA] by willfully representing to

---

[4] ORS 646.608 provides, in part:

"(1) A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following:

"* * * * *

"(e) *Represents* that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or *that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have.*" (Emphasis added.)

plaintiffs that *defendants' services as buyers' agents had qualities of competency and diligence* that they did not have." (Emphasis added.) The jury returned a verdict for plaintiffs, finding that defendants had breached fiduciary duties and violated the UTPA. The jury awarded economic damages of $13,600 and noneconomic damages of $20,000. Pursuant to ORS 646.638(3), the trial court entered a supplemental judgment awarding plaintiffs $31,629 in costs and attorney fees.[5]

On appeal, three of defendants' assignments of error require discussion. We begin with defendants' contention that the trial court erred in denying their motion for a directed verdict on plaintiffs' UTPA claim. Defendants argue that (1) the disclosure form, mandated by ORS 696.820, did not constitute an actionable representation under ORS 646.608(1)(e); (2) the fiduciary duties listed in the form did not relate to "qualifications" as that term is used in ORS 646.608(1)(e); and (3) evidence of a single episode of negligence is insufficient as a matter of law to support a finding of willfulness under the UTPA. *See* ORS 646.605(10) ("A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation."). Plaintiffs respond that "the core of plaintiffs' claims is about diligence and service," and that "the jury was squarely presented with the issue of whether Zobel's services were of the kind that a buyers' agent gives" in the face of an express representation that Zobel would act as a buyers' agent.

■■ We can reverse the trial court's denial of defendants' directed verdict motion only if the record reveals a complete lack of evidence on one or more elements of the UTPA claim. *Seidel v. Time Ins. Co.*, 157 Or App 556, 561, 970 P2d 255 (1998). To establish that claim, plaintiffs were required to prove: (1) a representation by defendants, (2) in the course of defendants' business, (3) that Zobel had qualifications (4) that, in fact, Zobel did not have, *see* ORS 646.608(1)(e), when (5) defendants knew or should have known that the

---

[5] ORS 646.638(3) provides that "[e]xcept as provided in subsection (4) [relating to class actions], the court may award reasonable attorney fees to the prevailing party in an action under this section."

misrepresentation would constitute a violation of the UTPA. *See* ORS 646.605(10).

■ At the threshold, defendants contend that the disclosure form prescribed in ORS 696.830 is not an actionable representation, because it "is nothing more than a recital of defendants' statutory fiduciary duties." We agree. ORS 646.612(1) provides that ORS 646.607 and ORS 646.608 do not apply to "[c]onduct in compliance with * * * a statute administered by a federal, state or local government agency." ORS 696.820 provides that "[a]n agent *shall* personally provide each seller and each buyer in a real property transaction with a copy of the disclosure form set forth in ORS 696.830." (Emphasis added.) ORS 696.820 is administered by the Oregon Real Estate Commissioner, who is authorized to discipline any real estate licensee who has "[d]isregarded or violated any provisions of * * * ORS 696.800 to 696.855 * * *." ORS 696.301(5). Because ORS 696.820 required Zobel to provide the disclosure form to plaintiffs, the contents of the disclosure form do not constitute an actionable representation under ORS 646.608(1)(e). Although plaintiffs rely primarily on the disclosure form, they also argue that Zobel represented *expressly* that he was experienced with rural properties and represented *impliedly* that he would act competently on plaintiffs' behalf. We summarily reject plaintiffs' express misrepresentation argument, because they have identified no evidence suggesting that Zobel was not experienced with rural properties.

■ Plaintiffs' implied representation theory requires more extended consideration. ORS 646.608(2) provides that an actionable representation under ORS 646.608(1) "may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." Neither this court nor the Supreme Court has upheld a claim under the UTPA solely on the basis of an *implied* representation.[6] Assuming, however, that an implied representation

---

[6] *Cf. Chamberlain v. Jim Fisher Motors, Inc.*, 282 Or 229, 238, 578 P2d 1225 (1978) (holding that, because evidence was insufficient, the trial court erred in allowing the jury to consider an alleged implied representation); *Classic Instruments v. VDO-Argo Instruments*, 73 Or App 732, 700 P2d 677 (1985) (addressing "implied passing-off" in a trademark infringement action under the federal Lanham Act); *All-States Leasing v. Ochs*, 42 Or App 319, 332-33, 600 P2d

could serve as the sole basis for a UTPA claim, plaintiffs did not establish that any such representation was false.

To prove Zobel's incompetence, plaintiffs offered evidence only that he acted negligently in the transaction at issue in this case. However, "incompetent" and "negligent" are not synonyms. *See Port of Portland v. Brady-Hamilton*, 62 Or App 92, 97, 659 P2d 995 (1983) (holding that, where a witness testified about a crane operator's competence, cross-examination regarding a history of complaints about the operator's performance could have no bearing on whether the crane operator was negligent in his actual operation of the crane during the incident). "Incompetent" describes an *actor* lacking "sufficient aptitude, skill, strength, or knowledge." *See Websters Third New Int'l Dictionary*, 463 (unabridged ed 1993) (defining "competent"). "Negligent" describes *conduct* that creates an unreasonable risk of a foreseeable harm. *Slogowski v. Lyness*, 324 Or 436, 441, 927 P2d 587 (1996). It is thus possible for an actor to possess sufficient aptitude, skill, strength, and knowledge to avoid errors, and nevertheless to act in a manner that creates an unreasonable risk of a foreseeable harm. Accordingly, the actor could act negligently but nevertheless be competent.

Because plaintiffs offered no evidence of any acts by Zobel *other than* in the course of the transaction at issue in this case, there is no evidence that, in offering Zobel's services to plaintiffs, defendants *should have known* Zobel to be incompetent. If evidence of a single episode of negligence were sufficient to support an inference that the actor also was incompetent, any negligent act or omission by a professional *automatically* would suffice as an *implied* misrepresentation of competence under ORS 646.608(1). Put differently, evidence that Zobel breached his general duty of care in the present transaction would establish the falsity of an implied representation that he was competent. Such a conclusion would hopelessly confuse the common-law doctrine of negligence with statutory misrepresentation claims under the UTPA. Because there was no evidence that defendants violated ORS 646.608(1)(e), the trial court erred in denying

899 (1979) (affirming the trial court's dismissal of UTPA counterclaims including one based on an implied representation).

defendants' motion for a directed verdict on plaintiffs' UTPA claim.

■ We turn to defendants' contention that the trial court erred in denying their motion to strike plaintiffs' claim for emotional distress damages in connection with their breach of fiduciary duty claim. In reviewing that decision, we consider whether there was any evidence to support the jury's award. *Tadsen v. Praegitzer Industries, Inc.*, 324 Or 465, 468, 928 P2d 980 (1996). Generally speaking, damages for negligent infliction of emotional distress may not be recovered in the absence of evidence of physical injury. *Rustvold v. Taylor*, 171 Or App 128, 137, 14 P3d 675 (2000), *rev allowed* 332 Or 56 (2001). There are exceptions to the physical injury requirement, one of which permits the recovery of emotional distress damages arising from conduct that, even if no more than negligent, infringed on a legally protected interest that is independent of an ordinary tort claim for negligence. *Nearing v. Weaver*, 295 Or 702, 706, 670 P2d 137 (1983); *Rustvold*, 171 Or App at 138.

Plaintiffs rely on that exception, contending that they established defendants' infringement of four separate legally protected interests: an interest created by the realtor-client relationship between the parties; plaintiffs' rights under the UTPA; plaintiffs' rights under ORS 696.810(2), which lists the fiduciary duties of a buyers' real estate agent; and plaintiffs' expectancy interest in the use and enjoyment of the real property they intended to purchase. According to plaintiffs, each of those interests is of sufficient importance to warrant recovery of emotional distress damages despite the absence of physical injury.

■ Plaintiffs rely on *Curtis v. MRI Imaging Services II*, 148 Or App 607, 941 P2d 602 (1997), *aff'd on other grounds* 327 Or 9, 956 P2d 960 (1998), for the proposition that a professional relationship in which an agent undertakes to exercise independent judgment on a client's behalf creates an interest sufficiently important to permit recovery of emotional distress damages. In *Curtis*, the plaintiff sought emotional distress damages arising from the defendants' administration of an MRI procedure without warning the plaintiff

of its potential claustrophobic effects, their failure to terminate the procedure when the plaintiff began to suffer from those effects, and their failure to monitor the procedure properly. The trial court granted judgment on the pleadings to the defendants, ruling that emotional distress damages could not be predicated on the parties' professional relationship. On appeal, we reversed, stating that "the relationship between [the] plaintiff and [the] defendant medical professionals, as alleged in the complaint, does give rise to such an actionable 'legally protected interest.'" *Id.* at 618. We further stated that

> "[t]he determination of whether an invasion of a protected interest is of a sufficient quality or magnitude to warrant recovery of emotional distress damages seems, almost inevitably, to be case-specific. *See, e.g., Meyer v. 4-D Insulation Co., Inc.*, 60 Or App 70, [73-]74, 652 P2d 852 (1982) (describing seemingly 'ad hoc' quality of judicial decisions in this area). Regardless, we conclude that plaintiff's complaint alleges an invasion sufficient to support recovery of such damages." *Id.* at 621-22.

On review, the Supreme Court took a different tack. The court analyzed the case as "a straightforward claim for medical malpractice," rather than as a question of whether an independent legally protected interest had been violated negligently, thus warranting recovery for emotional distress. *Curtis*, 327 Or at 13. The court concluded that the plaintiff had alleged "a specific duty to be aware of and guard against particular adverse psychological reactions or consequences to medical procedures." *Id.* at 14-15. The court emphasized that its holding was not meant to subject all medical professionals to a heightened standard of care:

> "Our holding should not be read to mean that medical professionals operate under a general duty to avoid any emotional harm that foreseeably might result from their conduct. In that regard, their duty is no greater than that of the population at large. But, *where the standard of care in a particular medical profession recognizes the possibility of adverse psychological reactions or consequences as a medical concern * * *,* the law will not insulate persons in that profession from liability if they fail in those duties, thereby causing the contemplated harm." *Id.* at 15-16 (emphasis added).

It is not entirely clear to what extent the reasoning of *Curtis* applies to cases—such as this one—that cannot be regarded as "straightforward" medical malpractice claims. However, we need not decide whether *Curtis* applies broadly to claims such as plaintiffs' here. As noted, *Curtis* makes clear that a *particular* duty to prevent emotional distress does not inhere in every professional relationship, even those that directly involve the rendition of health care services. It follows that, *if Curtis* applies, in order to recover emotional distress damages for defendants' breaches of fiduciary duty, plaintiffs were required to prove that defendants owed them a particular duty to avoid the negligent infliction of emotional distress. That plaintiffs did not do. Plaintiffs proved that defendants breached fiduciary duties. However, plaintiffs offered no evidence showing that, in this context, defendants had a duty to recognize as a particular concern the risk of an adverse psychological reaction or consequence if the transaction were to go awry.[7] Accordingly, plaintiffs cannot rely upon *Curtis* to support the recovery of emotional distress damages here.

The same conclusion is compelled under this court's prior decisions applying the "legally protected interest" exception. We consistently have rejected claims for emotional distress damages stemming from relationships that are fundamentally economic, either because they did not involve an invasion of legally protected interests or because the interests were not deemed to be sufficiently important. *See Stevens v. First Interstate Bank*, 167 Or App 280, 287, 999 P2d 551 (2000) (characterizing the relationship between depositors and their bank as "*not of the sort* that Oregon courts have found gives rise to the requisite distinct 'legally protected interest' " (emphasis added)); *see also McCulloch v.*

---

[7] Assuming that *Curtis* applies here, because plaintiffs offered no evidence establishing the existence of such a duty, we need not dwell at length on the more vexing question of what type of evidence would suffice. *Curtis* asks whether the applicable standard of care "recognizes the possibility of adverse psychological reactions or consequences" resulting from the relevant medical procedures. 327 Or at 15-16. Although that standard is established with relative ease by expert testimony in malpractice cases involving health care professionals, it may be more problematic in tort actions involving other professionals—such as realtors—who lack special expertise in the assessment of psychological reactions possibly resulting from the rendition of those types of services.

*Price Waterhouse LLP*, 157 Or App 237, 252, 971 P2d 414 (1998), *rev den* 328 Or 365 (1999) ("The underlying interest arises from the relationship between [the] plaintiff as a client and [the] defendants as accountants. Even though the relationship is fiduciary in nature, it is fundamentally an economic one."); *Collver v. Salem Insurance Agency, Inc.*, 132 Or App 52, 66, 887 P2d 836 (1994), *rev den* 320 Or 598 (1995) (holding in a client's action against insurance agents that, assuming that the right to a driver's license is a legally protected interest, it is primarily an economic interest and is not of sufficient importance); *Hilt v. Bernstein*, 75 Or App 502, 515, 707 P2d 88 (1985), *rev den* 300 Or 545 (1986) (concluding that the right to competent legal representation is an economic interest not important enough to merit protection from emotional impact); *Flowers v. Bank of America*, 67 Or App 791, 794, 679 P2d 1385, *rev den* 297 Or 601 (1984) (concluding that a bank client's contractual right to have a credit card honored is insufficiently important).

Plaintiffs attempt to distinguish the foregoing cases by arguing that their paramount interest arising from the realtor-client relationship was "the use and enjoyment of a safe and sound home," an interest that they contend was not merely economic. That may well be so, but the relationship among the parties was *fundamentally* economic. Defendants were to be paid for services rendered in procuring property of a type that is regularly bought and sold in a recognized market. Although it is foreseeable that the failure of a residential real estate transaction might cause emotional injury to a disappointed purchaser, the legal source of defendants' liability cannot be merely the foreseeability of such injury. *Hammond v. Central Lane Communications Center*, 312 Or 17, 25, 816 P2d 593 (1991). In this case, the evidence showed that defendants' sole undertaking was to aid plaintiffs in the *purchase* of a residence. That undertaking was fundamentally economic and, therefore, not sufficient to support an award of emotional distress damages.[8]

---

[8] *Amicus* Oregon Association of Realtors criticizes the *ad hoc* nature of this court's application of the "importance" test for determining whether a legally protected interest warrants the recovery of emotional distress damages. It argues that we should abandon that test in favor of a determination whether avoidance of emotional injury is included within the scope of the defendant's legal duty to the plaintiff. The argument is superficially alluring, but it overlooks the fact that any

As noted, apart from the parties' professional relationship itself, plaintiffs contend that they established defendants' infringement of three additional legally protected interests: plaintiffs' rights under ORS 696.810(2), which lists the fiduciary duties of a buyers' agent in a real property transaction; plaintiffs' rights under the UTPA; and plaintiffs' expectancy interest in the use and enjoyment of property. However, whether analyzed under *Curtis* or viewed in light of the "legally protected interest test," those arguments do not advance plaintiffs' position.

■ With respect to *Curtis*, each of plaintiffs' alleged interests is predicated solely upon Zobel's undertaking as their agent in a real property transaction. Accordingly, in order to prevail, plaintiffs must establish that Zobel owed a specific duty—arising from that undertaking—to recognize the risk of and prevent emotional distress. 327 Or at 15-16. As noted, plaintiffs did not establish the existence of such a duty.

With respect to the "legally protected interest" test, plaintiff's statutory rights under ORS 696.810(2) are not meaningfully distinct from their first asserted interest, which is fundamentally economic and would not support an award of damages for emotional injury. Plaintiffs' third asserted interest, arising from the UTPA, falls with that claim. For their fourth asserted interest, plaintiffs rely on *Macca v. Gen. Telephone Co. of N.W.*, 262 Or 414, 495 P2d 1193 (1972), for the proposition that an interference in the use and enjoyment of property constitutes infringement of a

---

nonconsensual limitation on the scope of a legal duty is inherently policy-driven. *See Buchler v. Oregon Corrections Div.*, 316 Or 499, 509, 853 P2d 798 (1993) (holding that "duty" is a method of describing how the law "limits the circumstances or conditions under which one member of society may expect another to pay for harm suffered"). So, for example, is it more principled to hold that a professional does not owe a *duty* to a client to avoid negligently causing him or her emotional distress because the applicable standard of care did not include such a duty, or, on the other hand, to hold that the client's *interest* is not sufficiently important to warrant recovery of damages for economic injury in the context of a fundamentally economic relationship? Because both formulations measure the extent of the defendant's legal obligation to the plaintiff, each merely provides a different way of expressing a legal conclusion—one that will seem *ad hoc* to many. Here, we arrive at the same conclusion under the *Curtis* test as we do under the traditional "importance" test. Thus, our consideration of one confirms the result of the other.

separate legally protected interest that would support damages for emotional distress:

> "The present case is in the same posture. The complaint seeks damages for the distress incident 'to the uprooting of [plaintiffs'] children and themselves from the security of a home of their own, and incident to the threat of being forced to complete the purchase of a house unfit for occupancy.' That is, in essence, a claim for interference with the right to use and enjoy property."

Plaintiffs acknowledged at oral argument that, because they never owned the property, their interest was merely an *expectancy* interest. They urge us to extend the rationale of *Macca* to protect expectancies. However, *Macca* applies only to claims involving an invasion of a right to enjoy property without unreasonable interference—claims that invoke nuisance, trespass or similar legal principles. *See Stevens*, 167 Or App at 290-91; *McGregor v. Barton Sand & Gravel, Inc.*, 62 Or App 24, 32-33, 660 P2d 175 (1983). Here, plaintiffs' expectancy interest is rooted in defendants' undertaking to assist them in *procuring* property, rather than in any duty to avoid interfering with the *use* of property. *Macca* is therefore inapplicable here. Accordingly, the trial court erred in denying defendants' motion to strike plaintiffs' request for emotional distress damages.

Finally, defendants assign error to the trial court's award of attorney fees to plaintiffs under ORS 646.638, a provision of the UTPA. Because we have concluded that there was no evidence to support the jury's finding that defendants violated the UTPA, plaintiffs are not the prevailing party on that claim. *See Wilkes v. Zurlinden*, 328 Or 626, 633, 984 P2d 261 (1999) (holding that "prevailing party" was specific to the claim and statute under which attorney fees were awarded). Accordingly, the trial court's award of attorney fees to plaintiffs under ORS 646.638 must also be reversed.

Judgment for noneconomic damages, for violation of Unlawful Trade Practices Act, and award of attorney fees reversed; otherwise affirmed.