Lowell C. **BIBERDORF**, Plaintiff,

v.

State of **OREGON** and Multnomah County, Defendants and Third–Party Plaintiffs,

v.

Donald J. **Watt** and Randall **Vogt**, Third–Party Defendants.

No. CIV.00–949–BR.

United States District Court, D. Oregon.

Dec. 2, 2002.

Michael E. Rose, Steenson, Schuman, Tewksbury & Rose, Portland, OR, for Plaintiff.

Hardy Myers, Attorney General, John Clinton Geil, Assistant Attorney General, Department of Justice, Portland, OR, for State of Oregon.

Thomas Sponsler, County Attorney, Susan M. Dunaway, Assistant County Attorney, Office of the Multnomah County Attorney, Portland, OR, for Multnomah County.

Paul Silver, Nikola L. Jones, Lindsay, Hart, Neil & Weigler LLP, Portland, OR, for Donald J. Watt and Randall Vogt.

## OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on Plaintiff Lowell C. Biberdorf's Second Motion for Partial Summary Judgment (# 153), Defendant and Third–Party Plaintiff Multnomah County's Motion for Summary Judgment (# 160), Defendant and Third–Party Plaintiff State of Oregon's Motion for Summary Judgment (# 194), and the Motion for Summary Judgment (# 124) filed by Third–Party Defendants Donald J. Watt and Randall Vogt. The Court heard oral argument on these Motions on September 4, 2002; November 5, 2002; and November 22, 2002.

For the reasons that follow, the Court **DENIES** Biberdorf's Second Motion for Partial Summary Judgment, **GRANTS IN PART** and **DENIES IN PART** Multnomah County's Motion for Summary Judgment, **DENIES** State of Oregon's Motion for Summary Judgment, and **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment filed by Watt and Vogt.

### STANDARDS

Fed.R.Civ.P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001). In response to a properly-supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e).

An issue of fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Guidroz–Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825, 829 (9th Cir.2001) (quot-

ing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). All reasonable inferences from the facts in the record must be drawn in favor of the nonmoving party. *Hensley v. Northwest Permanente P.C. Ret. Plan & Trust*, 258 F.3d 986, 999 (9th Cir.2001), *cert. denied*, 534 U.S. 1082, 122 S.Ct. 815, 151 L.Ed.2d 699 (2002). A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir.1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir.1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin*, 261 F.3d at 919.

### BACKGROUND

In 1996 Multnomah County Grand Juries charged Biberdorf with the same act of burglary in two successive prosecutions. Biberdorf was in custody while awaiting trial in each case. For part of the same time, he also was in custody on unrelated charges. After the first case was dismissed, Biberdorf pled no contest to Burglary in the First Degree in the second case, and the court sentenced him to an 18–month prison term. County and/or state authorities calculated and credited against Biberdorf's prison sentence only some of the pretrial time Biberdorf was in custody on the burglary charge in the second case and none of the time Biberdorf was in custody on the burglary charge in the first case. As a result, he did not receive all of the time-served credit to which he was entitled under state law, and authorities detained him in prison for several weeks beyond the date he was entitled to be released.

### FACTS

For purposes of the pending Motions, the following facts are undisputed except as noted:

On October 1, 1996, the District Attorney of Multnomah County, Oregon, filed an Information in Multnomah County Circuit Court, No. 9609–37252 ("first case"), charging Biberdorf with multiple counts of murder and related crimes. The court issued a warrant for Biberdorf's arrest. In the course of investigating a residential burglary the next day, October 2, 1996, police encountered Biberdorf, arrested him, and served the warrant. On October 10, 1996, the Grand Jury indicted Biberdorf in the first case for the murder and related crimes originally charged in the Information and for three counts of Burglary in the First Degree, one of which charged Biberdorf with the residential burglary that occurred October 2, 1996. The court arraigned Biberdorf on this Indictment the next day and detained Biberdorf in custody.[1]

---

1. Biberdorf asserts he first was placed in custody on the October 2, 1996, burglary charge by the police officers investigating that burglary who simultaneously served the arrest warrant for the murder charges. Multnomah County and State of Oregon contend Biberdorf first was held in custody on the October 2, 1996, burglary charge as of October 10, 1996, the date he was arraigned on the origi-

nal Indictment in the first case in which that burglary was charged. There is a factual dispute, therefore, concerning whether Biberdorf was entitled to time-served credit against his 18–month prison sentence for the time he spent in custody between October 2, 1996, and his arraignment on October 10, 1996. For purposes of the pending Motions, however, that dispute is not relevant.

On December 20, 1996, the Grand Jury returned an Indictment in Multnomah County Circuit Court, No. 9612–39055 ("second case"), that charged Biberdorf with the same October 2, 1996, residential burglary, but the Indictment did not charge Biberdorf with the murder and related crimes as in the first case.

At a proceeding on December 24, 1996, the court dismissed the first case without prejudice, arraigned Biberdorf on the second case, and continued Biberdorf in custody on the burglary charge. The court entered an amended order dismissing the first case and explicitly referencing the new case number as follows: "Defendant re-indicted and arraigned on C 9612–39055—Burglary I." Multnomah County Jail Detention Records Technicians received this order. The Oregon Judicial Information Network (OJIN) database file for the first case also contained a cross-reference entry to the second case number. Multnomah County Jail Detention Records Technicians, however, did not link the two cases for purposes of tracking the time Biberdorf was in custody for the October 2, 1996, burglary charge.

On December 26, 1996, the court appointed Watt to represent Biberdorf in the second case pursuant to the terms of the Indigent Defense Legal Services Contract between the Oregon State Court Administrator and the law firm that employs Watt. Vogt is a member of the same law firm.

On January 8, 1997, the Grand Jury issued a Re–Indictment in the second case adding another count of residential burglary to the October 2, 1996, burglary count. The court dismissed the original Indictment in the second case and, on January 9, 1997, arraigned Biberdorf on the Re–Indictment and continued him in custody on the two charged burglaries. When the prosecutor was unable to proceed to trial on March 5, 1997, the court dismissed the second case without prejudice. Although the court released Biberdorf from custody on the two burglary charges as of March 5, 1997, the court, nonetheless, detained him for unrelated probation sanctions until June 18, 1997.

In the meantime, on April 23, 1997, the Grand Jury issued another Re–Indictment in the second case again charging Biberdorf with the same two residential burglary counts that were dismissed March 5, 1997. The court arraigned Biberdorf on this subsequent Re–Indictment in the second case on April 30, 1997. Biberdorf completed his custody sanctions on the unrelated probation matters, and he returned to custody status on the pending burglary charges on June 18, 1997.

On July 8, 1997, Biberdorf entered a plea of no contest to Burglary in the First Degree, Count 2 of the second case, for the October 2, 1996, residential burglary. Although Watt knew Biberdorf had been held in custody on this charge under both Multnomah County cases, Watt did not ask the court to cross-reference the first case number on the sentencing order issued in the second case. Both Watt and the prosecutor, however, informed the court that Biberdorf had been held in custody under both cases and multiple indictments for the October 2, 1996, burglary charge of conviction. In addition, Watt stated on the record that Biberdorf had been in custody "since October 2nd of 1996" for various reasons, including the burglary charge of conviction, and that Biberdorf had been in custody "continuously 291 days for various reasons." Watt asked the court "to at least give credit for the amount of time that ... [Biberdorf] has served on this charge awaiting trial." The prosecutor told the court that he assumed Biberdorf would receive credit "for the time that he's been in since October 2nd." The sentencing judge commented such credit would be

"automatic unless there's a statement to the contrary."

The court accepted Biberdorf's no-contest plea, sentenced him to an 18–month state prison term without any express statement precluding credit for time served, and dismissed the other burglary charge. Although the Judgment of Conviction in the second case made no explicit reference to the first case number and the time Biberdorf served in county custody for the burglary charge of conviction thereunder, nonetheless, it provided "defendant may be considered for any form of ... reduction in sentence ... authorized by law and for which defendant is otherwise eligible."

The trial court closed the second case on July 10, 1997. Watt also closed his file at that time. Watt contends, and Multnomah County and State of Oregon deny, that Watt's representation of Biberdorf concluded upon entry of the Judgment of Conviction.

Pursuant to Or.Rev.Stat. § 137.320(1), the Sheriff of Multnomah County was required to deliver Biberdorf to the Oregon Department of Corrections (ODOC) "together with ... a statement ... of the number of days ... [Biberdorf] was imprisoned prior to delivery ...." Multnomah County Jail Detention Records Technicians prepare such statements of imprisonment in the course and scope of their employment pursuant to a Multnomah County policy set by Joyce Griffin, who is the final decision-maker for the Multnomah County policy at issue.

According to that policy, Detention Records Technicians count only the number of days a prisoner is in custody under a single Multnomah County Circuit Court case number and the pertinent count of conviction. Biberdorf and Multnomah County dispute, however, whether this policy prohibits Detention Records Technicians from also counting days a prisoner

served under an additional case number for the same charge of conviction when notified by the court, the prosecutor, the defense attorney, or some other reliable source that the additional case number also applies to the charge of conviction. Other than this case, Multnomah County is aware of only one other instance in the past 10 years when a person was held in County custody under two different court case numbers for the same charge.

On July 17, 1997, a Detention Records Technician employed by Multnomah County Sheriff's Office, acting in the scope of employment, issued the Sheriff's Statement of Imprisonment that certified only the number of days Biberdorf had been in Multnomah County custody on the burglary charge of conviction under the second case number beginning January 8, 1997. The Statement did not include any days Biberdorf was in custody on the burglary charge under the first case number or any of the days he was in custody between December 20, 1996, and January 8, 1997, under the second case number.

ODOC received Multnomah County's Statement of Imprisonment pertaining to Biberdorf on July 18, 1997. Pursuant to Or.Rev.Stat. §§ 137.320(3) and 137.370(1) and (2)(a), ODOC was required to compute Biberdorf's sentence and to include the time he was "confined ... after the arrest for the crime for which sentence is imposed."

To account for the time an inmate is confined "after the arrest for the crime for which sentence is imposed," ODOC relies solely on the Statement of Imprisonment delivered with an inmate. ODOC has adopted policies concerning inmate challenges to Statements of Imprisonment as set forth at OAR 291–100–0080. Pursuant to these policies, it is the inmate's responsibility to direct inquiries regarding credit for time served directly to the county sher-

iff or other qualified certifying authority. If an inmate is unsuccessful in obtaining a response from a sheriff's office, ODOC personnel will provide assistance only if the inmate has no time-served certification on file. ODOC's policy requires time-served credit "only for the presentence time the inmate served in the county jail ... as certified by the county sheriff ..., or if the time served certification is erroneous, as can be verified by Department records...."

On August 5, 1997, Biberdorf gave ODOC written notice that he disputed the accuracy of the County's Statement of Imprisonment. Biberdorf asserted he was entitled to time-served credit from October 2, 1996, until March 5, 1997, and he made explicit reference to both case numbers. ODOC's employee, C.L. Lopez, informed Biberdorf that she had only the Statement of Imprisonment "for case # 961239055 [the second case] .... If you feel you have more days, pl[ease] contact court. 'They' need to send me a new Statement of Imprisonment."

On August 15, 1997, Watt's office received a letter from Biberdorf dated August 7, 1997, in which Biberdorf complained Multnomah County had erred in its certification of the time he had spent in custody on the burglary charge of conviction. Watt did not respond to the letter. Watt denies Biberdorf's assertion that Biberdorf telephoned Watt's office at some point concerning this issue.

Biberdorf asserts he sent Multnomah County written notice on two occasions (October 21, 1997, and December 17, 1997) in which he stated the County had erroneously certified the number of days he had served in custody on the burglary charge of conviction. Pursuant to County policy, all employees who receive inquiries regarding time calculations must refer those inquiries to the Sheriff's Records Unit, and the Detention Records Technicians must

investigate all such inquiries. Multnomah County denies receiving any such notice. In particular, Joyce Griffin denies having knowledge of the events involved in this dispute as they were occurring. In any event, Biberdorf did not receive any communication about this issue from Multnomah County.

Biberdorf also sent a letter to the sentencing judge, the Honorable Robert W. Redding, dated January 7, 1998, in which he asserted he had not received full credit for all of the pretrial time he had served in custody on the burglary charge under both case numbers. Judge Redding received the letter on January 9, 1998, and scheduled a proceeding for January 15, 1998, to address the matter with counsel. Watt was on vacation at the time. Vogt, Watt's colleague, and the original prosecutor appeared before Judge Redding. Biberdorf, who still was in state custody, was not present at the proceeding. Biberdorf did not believe Watt was his lawyer at this time.

During the January 15, 1998, proceeding, Vogt did not disclaim he was representing Biberdorf on Watt's behalf, and he did not ask for another attorney to be appointed to represent Biberdorf. Vogt referred generally to the arguments and factual contentions set forth in Biberdorf's letter to Judge Redding. Although that letter explicitly asserted Biberdorf also was entitled to credit for days served under the first case number, Vogt did not affirmatively state to Judge Redding that there were two cases under which Biberdorf had been held for the same burglary charge. Vogt also did not ask Judge Redding to amend the sentencing order in the second case to reference explicitly the first case. Judge Redding declined to take any action on Biberdorf's request set out in his letter. Vogt wrote an office memorandum summarizing the proceeding, but he did

not inform Watt about the appearance on Watt's return.

On approximately April 9, 1998, Biberdorf prepared a petition for alternative writ of mandamus in which he alleged he was entitled to additional credit for time he had served on the burglary charge of conviction in both cases. It appears that petition was not filed with the state court. A copy of the petition, however, reached the desk of Deputy District Attorney John Hoover, who acted on it.

As a result, Multnomah County issued Amended Statements of Imprisonment dated June 3, 1998, that gave Biberdorf credit under the first case for time served between October 11, 1996, and December 27, 1996, and under the second case for time served between December 20, 1996, and March 5, 1997. Hoover sent Biberdorf copies of these Amended Statements on June 5, 1998, and noted there was a six-day "overlap credit" from December 20, 1996, to December 27, 1997. On June 7, 1998, Multnomah County again amended its Statements of Imprisonment to eliminate that six-day "overlap credit" and thus certified Biberdorf was entitled to 154 additional days credit for time served from October 11, 1996, to December 27, 1996, and from December 28, 1996, to March 5, 1997. Neither version of the Amended Statements, however, gave Biberdorf credit for the period between October 2, 1996, and October 11, 1996.

On June 5, 1998, ODOC received Multnomah County's Amended Statements of Imprisonment dated June 3, 1998. ODOC also received Multnomah County's June 7, 1998, "Amended Again" Statements of Imprisonment on June 9, 1998. If Multnomah County's original Statement of Imprisonment also had included the time Biberdorf was in custody on the burglary charge as reflected in the Amended Statements, ODOC would have released Biberdorf from state custody some time in April 1998. ODOC did not release Biberdorf, however, until June 15, 1998.

## BIBERDORF'S CLAIMS

### Discussion

In his Second Amended Complaint, Biberdorf alleges three claims. Biberdorf brings his first claim against Multnomah County under [42 U.S.C. § 1983] for alleged violations of Biberdorf's rights under the Fourteenth and Eighth Amendments to the United States Constitution. Biberdorf's remaining claims are against both Multnomah County and the State of Oregon for the state law torts of false imprisonment and negligence.

In his Second Motion for Summary Judgment, Biberdorf seeks a summary determination in his favor on the question of liability against both Multnomah County and the State of Oregon. In its Motion for Summary Judgment, Multnomah County, in turn, seeks a summary determination that it is not liable to Biberdorf. The County contends the evidence is insufficient to support a § 1983 claim against it. In addition, the County asserts it has discretionary immunity from any liability under state law. In its Motion for Summary Judgment, the State of Oregon also asserts it is immune from liability under state law and moves for summary judgment on the question of liability.

**I. Biberdorf's § 1983 Claim against Multnomah County**

Biberdorf alleges in his § 1983 claim that Multnomah County violated his right under the Fourteenth Amendment not to be deprived of his liberty without due process of law. Biberdorf also alleges the County violated his Eighth Amendment right to be free from cruel and unusual punishment when, pursuant to County policy, Detention Records Technicians errone-

ously certified the number of days the County had detained him pretrial on the October 2, 1996, burglary charge, which resulted in Biberdorf's "over-detention" and late release from prison.

### A. The Law

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

Section 1983 creates a private right of action against persons who, acting under color of state law, violate federal constitutional or statutory rights. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir.2001). A county is a "person" subject to liability under § 1983 if its official policies cause the constitutional violation at issue. *Brewster v. Shasta County*, 275 F.3d 803, 805 (9th Cir.), *cert. denied*, —— U.S. ——, 123 S.Ct. 75, 154 L.Ed.2d 17 (2002) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). A county cannot be held liable under § 1983, however, on a "respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Accord Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior.").

There are several ways to establish § 1983 liability based on a municipal policy. The parties disagree, however, about the standard that controls Biberdorf's § 1983 claim. At the heart of the parties' dispute is the question whether Biberdorf must show Multnomah County acted with deliberate indifference in order to establish liability against the County under § 1983 and *Monell.*

In *Federal Jurisdiction*, Professor Erwin Chemerinsky points out there are at least five possible ways to prove *Monell* liability, one of which requires a showing of deliberate indifference:

[Another] ... way of demonstrating an official policy is by establishing a government policy of inadequate training or supervision.

\* \* \* \* \* \*

In *City of Canton, Ohio v. Harris*, the Supreme Court ... held that demonstrating a policy of inadequate training requires proof of deliberate indifference by the local government.

\* \* \* \* \* \*

The Supreme Court rejected the municipality's contention that § 1983 liability can be imposed only where the municipal policy in question is itself unconstitutional. A municipal policy that causes constitutional violations can be the basis for § 1983 liability.... The Court declared: "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a policy as defined by one of our prior cases—can a city be liable for such a failure under section 1983."

\* \* \* \* \* \*

In its most important ruling since *Canton*, in *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, the Supreme Court made it significantly more difficult to prove municipal policy based on deliberate indifference. In *Brown*, the Court ruled that a county's liability was not established by proving

that its sheriff acted improperly in hiring a deputy with a criminal record.

\* \* \* \* \* \*

The Court concluded that the single instance of inadequate screening was not sufficient to prove that the municipality caused the injuries. The Court said that "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict constitutional injury."

\* \* \* \* \* \*

The Court concluded that "Bryan County is not liable for Sheriff Moore's isolated decision to hire Burns without adequate screening, because respondent has not demonstrated that his decision reflected a conscious disregard for a high risk that Burns would use excessive force in violation of respondent's federally protected right."

Erwin Chemerinsky, *Federal Jurisdiction* 483–86 (3d ed.1999) (footnotes omitted).

Similarly, in *Gibson v. County of Washoe, Nev.*, the Ninth Circuit explained one of two "routes" to *Monell* liability that requires a showing of deliberate indifference:

Under a second route to municipality liability, a plaintiff need not allege that the municipality itself violated someone's constitutional rights or directed one of its employees to do so. Instead, a plaintiff can allege that through its *omissions* the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation. However, because *Monell* held that a municipality may not be held liable under a theory of respondeat superior, a plaintiff must show that the municipality's deliberate indifference

led to its omission and that the omission caused the employee to commit the constitutional violation.

290 F.3d 1175, 1185–86 (9th Cir.2002) (citations omitted; emphasis in original).

Accordingly, "deliberate indifference" is a critical element when the policy at issue is one of omission or failure to act, and the Supreme Court's decisions in *City of Canton* and *Board of County Comm'rs of Bryan County, Oklahoma v. Brown* apply when establishing *Monell* liability under this standard.

■ Another approach, however, permits *Monell* liability against a public body when a final decision-maker adopts a policy, and the policy itself is the moving force that causes a constitutional violation. In *Hopper v. City of Pasco*, the Ninth Circuit described this theory as one of three ways to achieve *Monell* liability:

As we have noted, there are three ways to meet Monell's policy or custom requirement: *First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal government policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity."* Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

241 F.3d 1067, 1082–83 (9th Cir.) *cert. denied,* 534 U.S. 951, 122 S.Ct. 346, 151 L.Ed.2d 261 (2001) (citations omitted; emphasis added). There is no requirement under this test that a plaintiff also must

show the policy-maker chose the particular policy with deliberate indifference to its consequences or that an employee acting pursuant to the policy did so with deliberate indifference.

### B. Multnomah County's Motion for Summary Judgment against Biberdorf's § 1983 Claim

■ In its Motion, Multnomah County contends it is entitled to summary judgment on Biberdorf's § 1983 *Monell* claim because there is no evidence Joyce Griffin established the County's policy for counting and certifying the number of pretrial days an inmate was in custody with deliberate indifference to the serious risk that the policy would result in a violation of the inmate's constitutional rights. Multnomah County relies on *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470 (9th Cir. 1992), to support its contention.

In *Oviatt*, however, the plaintiff brought a § 1983 *Monell* claim against Multnomah County challenging the sheriff's policy of inaction that caused plaintiff's detention in jail for 114 days before his arraignment. The Ninth Circuit found Multnomah County acted with deliberate indifference because 19 similar cases had occurred between 1981 and 1989. The court analyzed the *Monell* claim as challenging a policy of inaction and stated:

> Under *City of Canton*, before a local government entity may be held liable *for failing to act* to preserve a constitutional right, plaintiff must demonstrate that the official policy "evidences a 'deliberate indifference'" to his constitutional rights.

*Id.* at 1477 (citations omitted; emphasis added). Thus, *Oviatt* would support Multnomah County's argument only if Biberdorf challenged a policy of omission.

Biberdorf contends, however, his § 1983 claim does not depend on a policy of omission. Instead Biberdorf points to Multnomah County's affirmative policy that allegedly prohibits a Detention Records Technician from counting days that an inmate has served for the same charge under two different court case numbers. In other words, Biberdorf seeks to establish Multnomah County's § 1983 liability via the approach the Ninth Circuit described in *Hopper*. Biberdorf, therefore, maintains he need not meet the "deliberate indifference" standard the Supreme Court applied in policy-of-omission cases like *City of Canton* and *Board of County Comm'rs of Bryan County, Oklahoma*, to establish liability. To the extent Biberdorf's § 1983 claim arises from his Fourteenth Amendment right not to be deprived of his liberty without due process of law, this Court concurs. In that respect, therefore, the Court denies Multnomah County's Motion for Summary Judgment.[2]

■■ In addition to his claim under the Fourteenth Amendment, Biberdorf also asserts a § 1983 claim against Multnomah County for allegedly violating his Eighth Amendment right to be free from cruel and unusual punishment. It is well settled that a substantive claim under the Eighth Amendment is measured against a standard of "deliberate indifference." *Robinson v. Prunty*, 249 F.3d 862, 865 (9th Cir.2001). *See also Gibson v. County of*

---

**2.** In its Reply to Plaintiff's Amended Response to Multnomah County's Motion for Summary Judgment, Multnomah County seems to contend Biberdorf's Fourteenth Amendment claim also fails as a matter of law under the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47

L.Ed.2d 18 (1976). The County's argument, however, was not adequately developed in these Motions. The Court, therefore, declines to reach the issue in this Opinion and Order. The Court, however, will permit Multnomah County to address the issue more thoroughly at trial.

*Washoe, Nev.,* 290 F.3d at 1187; *Wallis v. Baldwin,* 70 F.3d 1074, 1076 (9th Cir.1995). As the Ninth Circuit explained in *Gibson,* however, the test for "deliberate indifference" for purposes of a substantive violation of the Eighth Amendment is different from the type of "deliberate indifference" that can establish a municipality's *Monell* liability for a policy of inaction:

> Because the Eighth Amendment's deliberate indifference standard looks to the subjective mental state of the person charged with violating a detainee's right ..., it—somewhat confusingly—differs from the *Canton* deliberate indifference standard, which we also apply in this opinion. The *Canton* deliberate indifference standard does not "turn upon the degree of fault (if any) that a plaintiff must show to make out an underlying claim of a constitutional violation;" instead it is used to determine when a municipality's omissions expose it to liability for the federal torts committed by its employees.

*Id.* at 1188 n. 8 (citations omitted).

Biberdorf's Eighth Amendment claim under § 1983 is not against a county official who deliberately disregarded a serious risk that Biberdorf would be detained longer than his sentence nor is it against the County itself based on a policy of omission. Instead Biberdorf asserts Multnomah County violated his Eighth Amendment right to be free from cruel and unusual punishment when Joyce Griffin's policy for counting time-served credit allegedly compelled County Detention Records Technicians to tally only the days Biberdorf served under the single court case number and count of conviction in the second prosecution for burglary. To find the County liable for an Eighth Amendment violation under this theory, Biberdorf must show both that the County's policy posed a substantial risk of serious harm to him and that the County knew its policy posed this risk. *Gibson,* 290 F.3d at 1189.

In his Amended Response to Multnomah County's Motion for Summary Judgment, Biberdorf sets forth the evidence that he contends creates a jury question as to whether the County acted with deliberate indifference under the Eighth Amendment standard. Even when viewed in the light most favorable to Biberdorf, however, that evidence falls short. Although fact issues exist concerning the scope of the County's policy, there is no basis in the record for a juror to infer the County disregarded a known and substantial risk that Biberdorf would be harmed if Detention Records Technicians acted pursuant to the County's policy. Unlike the multiple incidents that showed the county's policy of inaction caused a substantial risk for constitutional injury in *Oviatt,* only one other incident of the type at issue here occurred in the ten-year period preceding Biberdorf's conviction. In addition, no County employee actually was aware Biberdorf was detained for the same burglary under two different court case numbers until long after the County delivered Biberdorf to ODOC with its initial Statement of Imprisonment.

The Court concludes, therefore, the evidence in this record is insufficient to show Multnomah County acted with deliberate indifference, and the Court grants the County's Motion for Summary Judgment as to Biberdorf's § 1983 for violation of his Eighth Amendment rights.

### C. Biberdorf's Apparent Second Motion for Partial Summary Judgment on his § 1983 Claim against Multnomah County

It is unclear from Biberdorf's papers whether his Second Motion for Partial Summary Judgment also applies to his § 1983 claim against Multnomah County. In the introduction to his Memorandum in support of the Motion, Biberdorf states he seeks partial summary judgment on

"Claims 2 and 3 of the amended complaint, the claims brought under state law." At the conclusion of his Memorandum, Biberdorf asserts the Court should grant him partial summary judgment "against defendants County and State on the issue of liability." In the body of his Memorandum, however, Biberdorf makes legal arguments applicable only to his *Monell* claim against Multnomah County under § 1983. The County, in turn, filed an opposing memorandum that included its position on Biberdorf's § 1983 *Monell* claim against it. The Court, therefore, assumes from the pleadings of Biberdorf and the County that Biberdorf intended to move for partial summary judgment on his § 1983 *Monell* claim in an effort to establish the County's liability as a matter of law. As a result, the Court considers whether Biberdorf is entitled to partial summary judgment against the County on this record as to the question of the County's potential liability for violation of Biberdorf's Fourteenth Amendment rights pursuant to § 1983.

Biberdorf had a well-settled Fourteenth Amendment liberty interest in credit for time served in County custody on the burglary charge for which he was convicted. *Plumb v. Prinslow,* 847 F.Supp. 1509, 1516–17 (D.Or.1994). Biberdorf argues the County's policy effectively prohibited Detention Records Technicians from counting the days he served in County custody under the first case number on the same burglary charge for which he was convicted under the second case number. Biberdorf maintains, therefore, the County's policy was, as a matter of law, the "moving force" in depriving him of his liberty without due process of law. As previously noted, however, there are issues of material fact concerning the scope of the County's policy.

Under the County's characterization, its policy may, in fact, require Detention Rec-ords Technicians to count days served under a different case number for the same charge of conviction if a court ordered such a linkage or if one was established by another reliable authority. If a jury accepted the County's version of its policy, it is possible the jury might conclude an employee's failure to follow the policy caused Biberdorf's over-detention rather than the policy itself. Although there could be County liability in common law negligence if the County's employees negligently failed to follow the County's policy, that negligence could not support *Monell* liability under Biberdorf's § 1983 claim.

Based on the foregoing, to the extent Biberdorf's Second Motion for Partial Summary Judgment seeks a determination of liability in his favor, the Court denies the Motion because a jury must decide both the scope of the County's policy and whether the policy itself was a "moving force" in Biberdorf's over-detention in custody.

## II. *False Imprisonment*

Biberdorf alleges a state law claim for false imprisonment in his Second Claim against Multnomah County and the State of Oregon.

### A. Discretionary Immunity under State Law

 Multnomah County and the State of Oregon each seek summary judgment on Biberdorf's false imprisonment claim on the basis of discretionary immunity. Pursuant to Or.Rev.Stat. § 30.265(3)(c), public bodies and their officers, employees, and agents acting within the scope of their employment are immune from liability for any claim based on the performance of or the failure to perform a discretionary function or duty. As the Oregon Supreme Court recently explained:

Discretionary immunity protects governmental defendants from liability for certain types of decisions, namely, those that require supervisors or policy makers to assess costs and benefits, and to make a choice among competing goals and priorities. The doctrine of discretionary immunity does not immunize a decision not to exercise care at all, if action of some kind is required. To qualify for discretionary immunity under ORS 30.265(3)(c), the city must show that it made a decision "involving the making of policy" as opposed to a "routine decision[ ] made by employees in the course of their day-to-day activities[.]" The burden is on the governmental defendant to establish its immunity.

*Vokoun v. City of Lake Oswego,* 335 Or. 19, 31, 56 P.3d 396, 403 (2002) (citations omitted).

■■■ Multnomah County and the State of Oregon each have offered evidence showing their respective policies for computing time-served credit and for responding to inmate inquiries about certification errors are the types of discretionary policy choices that trigger immunity pursuant to Or.Rev.Stat. § 30.265(3)(c). Accordingly, the County and the State each argue they are entitled to discretionary immunity from Biberdorf's false imprisonment claim because his over-detention allegedly occurred as a result of policies each entity implemented in the exercise of its discretion.

Although Biberdorf did not controvert the evidence concerning the manner in which the County and State policies were established, there is evidence from which jurors could conclude Biberdorf's over-detention occurred because County and State employees did not follow their respective policies. In that event, neither public body would be entitled to discretionary immunity. For example, when viewing the evidence in the light most favorable to Biberdorf, jurors could conclude that County personnel violated County policy when they ignored the December 24, 1996, Amended Order of Dismissal in the first case that linked the burglary charge thereunder to the burglary charge for the same incident in the second case. In addition, jurors could find Biberdorf sent County personnel two separate notices explaining the County's errors on the original Statement of Imprisonment, but County personnel ignored those notices in violation of County policies. Viewing the evidence in the light most favorable to Biberdorf, jurors also could conclude State employees ignored evidence that the County's original Statement of Imprisonment contained significant errors and did not follow its own administrative rule to address the error. Accordingly, issues of fact preclude any summary resolution of the question whether Multnomah County and the State of Oregon are entitled to discretionary immunity from Biberdorf's false imprisonment claim.

**B. Intent to Confine as an Element of False Imprisonment**

■■■ As the Oregon Court of Appeals noted in *Hiber v. Creditors Collection Service,* the tort of false imprisonment has four elements:

(1) defendant must confine the plaintiff; (2) defendant must intend the act that causes confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful.

154 Or.App. 408, 413, 961 P.2d 898, 901 (1998) (citation omitted).

Multnomah County also seeks summary judgment against Biberdorf's false imprisonment claim on the basis that there is no evidence the County acted with the requisite intent. Again relying on *Oviatt,* the County appears to argue

that Biberdorf must show the County acted with deliberate indifference in order to show the necessary intent to confine. This Court disagrees. In *Oviatt*, the court merely concluded the county's deliberate indifference was sufficient to prove intent to confine for purposes of a false imprisonment claim. The court did not elevate the intent-to-confine element of the tort to "deliberate indifference" for all purposes. When viewed in the light most favorable to Biberdorf, the evidence in this case is sufficient to show County records personnel acted with intent to confine Biberdorf consistent with the computation set forth in the Statement of Imprisonment.

### C. Biberdorf's Second Motion for Partial Summary Judgment against Multnomah County and State of Oregon for False Imprisonment

■ In his Second Motion for Partial Summary Judgment, Biberdorf asserts he is entitled to summary judgment against Multnomah County and the State of Oregon as a matter of law. Biberdorf argues the undisputed facts establish each element of the tort of false imprisonment against each Defendant. It is undisputed Multnomah County and the State of Oregon each confined Biberdorf, he was aware of his confinement, and he was detained longer than the time permitted by Oregon law. For purposes of these Motions, the Court also concludes Biberdorf has shown the element of intent to confine as to each Defendant. The Court finds, therefore, Biberdorf has established each element of his *prima facie* false imprisonment claim against Multnomah County and the State of Oregon.

Biberdorf's counsel acknowledged at oral argument, however, that a jury still must resolve fact issues concerning the relative fault of each defendant. In addition, Multnomah County and the State of

Oregon each assert they are entitled to discretionary immunity for any liability they may have to Biberdorf for false imprisonment. As noted, issues of fact preclude summary resolution of that defense. Nonetheless, Biberdorf asserts he is entitled to summary judgment on liability because the defense of discretionary immunity is not available to immunize Multnomah County and the State of Oregon for the intentional tort of false imprisonment. In this instance, Biberdorf relies on *Oviatt*:

> We believe that under Oregon case law, state actors are not immunized for their intentional acts. In *Crosby v. SAIF Corp.*, ... the Oregon Court of Appeals held that the tort of civil conspiracy, because of its intentional nature, was not immune under the Tort Claims Act.... The court reasoned that "conspiring with an employer ... to eliminate a worker's entitlement to benefits is not a matter of discretion." ... Admittedly, while the court stated that the defendant "cites no authority for the proposition that intentional torts that involve unlawful conduct can be immune under ORS 30.265(3)(c)," its holding did not extend that far. Nevertheless, we believe that an Oregon court faced with this issue would hold that intentional torts are not immune from liability. Accordingly, defendants are not immune under the Tort Claims Act because acting with deliberate indifference with regard to an inmate's constitutional rights is not a matter of discretion.

*Id.* at 1481 (citations omitted).

The defendant in *Oviatt*, however, acted with deliberate indifference, and the *Oviatt* court relied on *Crosby v. SAIF*, a case in which defendants engaged in a civil conspiracy. It is not clear, therefore, whether an Oregon court also would preclude the defense of discretionary immunity when a defendant merely intends an act of con-

finement that ultimately is determined to be unlawful but does so, as here, without deliberate indifference and without a specific intent to do so wrongfully. In the absence of Oregon authority that the defense of discretionary immunity is not available in these circumstances, the Court denies Biberdorf's Motion on this record with leave to renew the issue at trial.

### III. Negligence

■ To the extent Biberdorf seeks summary judgment on his state law negligence claims against Multnomah County and the State of Oregon, and to the extent Multnomah County and the State of Oregon seek summary judgment against Biberdorf on his negligence claim on the basis of discretionary immunity, the Court denies the Motions. There are issues of fact a jury must resolve concerning, *inter alia*, whether Multnomah County's employees acted reasonably when they apparently ignored Judge Redding's December 24, 1996, Amended Order that dismissed the first case and apparently linked it to the burglary charge in the second case and whether Multnomah County employees received and acted reasonably in response to Biberdorf's written complaints concerning errors in the original Statement of Imprisonment. As noted, issues of fact also prevent resolution of the County's defense of discretionary immunity as it may apply to Biberdorf's negligence claims.

### CLAIMS OF MULTNOMAH COUNTY AND STATE OF OREGON AGAINST WATT AND VOGT

In their Amended Third–Party Complaints against Third–Party Defendants Watt and Vogt, Multnomah County and the State of Oregon contend Watt and/or Vogt failed to take steps during and after Biberdorf's sentencing that resulted in Biberdorf serving additional days in prison. To the extent they are found liable on any of Biberdorf's claims against them, Mult-

nomah County and the State of Oregon seek contribution and indemnity from Watt and Vogt. In turn, Watt and Vogt move for summary judgment asserting the Third–Party Complaints of Multnomah County and the State of Oregon fail as a matter of law.

### I. Availability of Contribution and Indemnity to Third–Party Plaintiffs Multnomah County and State of Oregon

■ In order to state a claim for contribution under Oregon law, Multnomah County and the State of Oregon first must allege facts that show Watt and Vogt also are liable to Biberdorf. "There is no right of contribution from a person who is not liable in tort to the claimant." Or.Rev. Stat. § 18.440(1). "In an action for indemnity, the claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter. The last requirement means that, although the claimant must have been legally liable to the injured third party, his liability must have been 'secondary' or his fault merely 'passive,' while that of the defendant must have been 'active' or 'primary.'" *Maurmann v. Del Morrow Const., Inc.*, 182 Or.App. 171, 177, 48 P.3d 185, 188 (2002) (citations omitted).

■ Watt and Vogt, however, never acted "under color of state law" as required for a § 1983 claim. In addition, even though Multnomah County and the State of Oregon allege in ¶¶ 15 and 16 of their respective Amended Third–Party Complaints that Watt and Vogt would be liable to Biberdorf for various failures to act, they do not contend Watt and Vogt acted with an intent to confine Biberdorf

as required for a false imprisonment claim. The Court finds, therefore, neither Multnomah County nor the State of Oregon has a contribution and/or indemnity claim against Watt or Vogt for any liability that Biberdorf may establish against them on his § 1983 and false imprisonment claims.

## II. *Failure of Watt and Vogt to Act After Entry of the Judgment of Conviction and Termination of the Attorney–Client Relationship*

■ "In the traditional legal malpractice action, as in other tort actions in which there is a special relationship between the plaintiff and the defendant, the plaintiff usually must allege and prove (1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) causation, i.e., a causal link between the breach of duty and the harm." *Stevens v. Bispham*, 316 Or. 221, 227, 851 P.2d 556, 560 (1993).

Watt and Vogt contend the Amended Third–Party Complaints for contribution or indemnity fail as a matter of law to the extent they are based on alleged professional negligence occurring after Biberdorf's sentencing and the entry of the Judgment of Conviction in July 1997. Watt and Vogt assert the attorney-client relationship between their law firm and Biberdorf ended with the entry of the July 1997 Judgment of Conviction terminating the criminal prosecution in which the court appointed Watt and his law firm to represent Biberdorf. As noted, Vogt's only involvement in this matter occurred in January 1998 when the prosecutor and Vogt appeared before Judge Redding in Watt's absence in response to Judge Redding's inquiry about Biberdorf's letter to the court. Vogt argues he owed Biberdorf no professional duty in January 1998 and, therefore, he seeks summary judgment on the third-party claims for contribution and indemnity. Watt also contends he had no

professional duty to seek relief for Biberdorf after entry of the Judgment of Conviction.

The Indigent Defense Legal Services Contract (Contract) pursuant to which the court appointed Watt and his law firm provides in part:

7.1 Obligations To Appointed Clients

7.1.1 Representation At All Court Proceedings in the Relevant Court.

Contractor shall provide representation at all stages of a case assigned under this contract as limited by this contract. Representation means the provision of competent legal advice and assistance by appointed counsel to a person that a state court has determined to be indigent and entitled to appointed counsel at state expense *on all matters related to the appointment* . . . .

\* \* \* \* \* \*

7.1.3 Specific Representation Services

Contractor shall provide services on any and all matters necessary to provide adequate representation of the indigent, including but not limited to:

\* \* \* \* \* \*

(c) filing all necessary motions, including pre-and post-judgment motions;

(d) representation through judgment or other final order of the court on the case . . . .

(Emphasis added.)

■ Multnomah County and the State of Oregon contend Watt and Vogt owed Biberdorf a continuing duty to make a motion to amend the Judgment of Conviction to reference explicitly the first case number. When pressed during oral argument to identify the authority for or source of such a duty, Multnomah County pointed to the Contract and asserted Biberdorf's post-judgment complaints about time-served credit were "matters related to the

appointment" of counsel pursuant to the Contract. In addition, Multnomah County and the State of Oregon maintain "nothing prevented" the lawyers from seeking to amend the Judgment of Conviction.

The Contract for appointed counsel contemplates counsel will file all "necessary" motions including "post-judgment motions," and counsel will provide "representation through judgment or other final order." Neither Watt, Vogt, Multnomah County, nor the State of Oregon have offered any evidence in this summary judgment record concerning the minimum standard of care for criminal defense practitioners in this community. In addition, there is no expert evidence in the record to clarify whether it would be "necessary" under these circumstances for court-appointed counsel to file a motion to amend a judgment. The Court notes, however, there are only a handful of Oregon cases and relatively few state cases nationwide that address the professional duties of a criminal defense attorney for purposes of a civil claim for legal malpractice. The Court does not find any decision that suggests a court-appointed criminal defense attorney has a professional duty to seek to amend a judgment of conviction in circumstances similar to those in this matter. Both Watt and his former client, Biberdorf, believe their attorney-client relationship ended at the conclusion of the state prosecution and the court's entry of the Judgment of Conviction. In the absence of any clear authority to indicate Oregon courts would permit a legal malpractice case to proceed based on a lawyer's alleged failure to act after entry of judgment, this Court declines to do so.

The Court, therefore, concludes Vogt is entitled to summary judgment because his only involvement was at the proceeding in January 1998 long after entry of the Judgment of Conviction and termination of his firm's attorney-client relationship with Biberdorf. To the extent Multnomah County and the State of Oregon seek contribution or indemnity for Watt's alleged failure to act in response to Biberdorf's letter to him in August 1997 after the entry of the Judgment of Conviction and the termination of the court-appointed attorney-client relationship, the Court concludes Watt also is entitled to summary judgment as a matter of law against the claims of Multnomah County and the State of Oregon in their respective Amended Third–Party Complaints.

### III. Biberdorf's Claim for Noneconomic Damages for Over–Detention in Prison

 Watt also argues he is entitled to summary judgment as a matter of law because the damages Biberdorf sustained by serving extra time in prison are purely noneconomic, and Oregon law ordinarily does not permit recovery for negligent infliction of emotional distress. Watt relies on Curtis v. MRI Imaging Services II, 327 Or. 9, 956 P.2d 960 (1998).

In Curtis, the Oregon Supreme Court held a patient stated a cognizable medical malpractice claim against her doctors for psychic trauma that she sustained when confined for an MRI procedure. To state a claim for legal malpractice in this matter, Watt reasons from Curtis that Multnomah County and the State of Oregon must show Watt had a specific professional duty to guard against the particular emotional or psychological harm allegedly sustained by Biberdorf when he served extra time in prison.

Watt also cites Rathgeber v. Hemenway, Inc., to support his argument. 176 Or. App. 135, 30 P.3d 1200 (2001). In Rathgeber, the Oregon Court of Appeals explained the Curtis court made it "clear that a particular duty to prevent emotional distress does not inhere in every profes-

sional relationship, even those that directly involve the rendition of health care services." *Id.* at 135, 30 P.3d 1200. Watt argues the Amended Third–Party Complaints fail because the Third–Party Plaintiffs allege only negligent infliction of emotional distress without any facts that show a specific professional duty to avoid the infliction of an emotional injury.

In *Curtis*, the Oregon Supreme Court avoided the label "negligent infliction of emotional distress" and analyzed the viability of the plaintiff's claim against the elements of a professional negligence claim. In this case, the Court analyzes the Amended Third–Party Complaints against the elements of a legal malpractice claim. Following *Curtis*, the Court declines to label the claim against Watt as one for "negligent infliction of emotional distress" for purposes of Watt's Motion.

The Court also notes the substance of Biberdorf's claim for noneconomic damages is for loss of his liberty over several weeks and, therefore, is broader than "mere" emotional distress. Although emotional distress may well be a component of his claim, Biberdorf's distress derives from physical detention. The Court doubts, therefore, the applicability of Watt's narrow reading of Oregon case law that limits recovery for purely emotional injuries. The Court finds more persuasive the analysis in *Holt v. Rowell*, 798 So.2d 767 (Fla. Dist.Ct.App.2001), in which the court criticized the application of the "physical impact" rule to preclude a client's damages claim against his lawyer whose negligence caused loss of liberty and resulting emotional harm.

Accordingly, the Court denies Watt's Motion for Summary Judgment to the extent he asserts Biberdorf could not have maintained a legal malpractice claim against him for noneconomic damages arising from Biberdorf's over-detention.

## IV. *Contribution and Indemnity for Watt's Alleged Negligence at Biberdorf's Sentencing*

After this Court's rulings herein, the only claim in the Amended Third–Party Complaints that remains for trial involves Watt's alleged failure at the sentencing proceeding to ask the court explicitly to reference in its sentencing order the first case number under which Biberdorf was held pretrial for the same burglary charge of conviction. This Court doubts the viability of this claim in light of the affirmative statements Watt made at sentencing concerning this subject. The Court also questions whether any evidence exists that will overcome the risk of speculating whether the sentencing court would have accommodated such a request. Because these arguments were not raised in Watt's moving papers, they cannot be resolved in this Opinion and Order.

### CONCLUSION

For these reasons, the Court **DENIES** Biberdorf's Second Motion for Partial Summary Judgment (# 153), **GRANTS in part** and **DENIES in part** the Motion for Summary Judgment of Multnomah County (# 160), **DENIES** the Motion for Summary Judgment of the State of Oregon (# 194), and **GRANTS in part** and **DENIES in part** the Motion for Summary Judgment filed by Watt and Vogt (# 124).

IT IS SO ORDERED.